# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Abington Little League, Inc. | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 895 C.D. 2021 |
| | : | |
| Glenburn Township Zoning Hearing Board | : | |
| | : | |
| Appeal of: David Druck, Marilyn Druck, Charles Sansky, Lynn Sansky, Gerard O'Sullivan, Cara O'Sullivan, and Marilyn Costa | : : : : | |
| | : | |
| Abington Little League, Inc., Appellant | : : | |
| | : | |
| v. | : | No. 925 C.D. 2021 |
| | : | Argued: December 15, 2022 |
| Glenburn Township Zoning Hearing Board | : : | |


BEFORE:   HONORABLE RENÉE COHN JUBELIER, President Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                      FILED: March 7, 2023


David Druck, Marilyn Druck, Charles Sansky, Lynn Sansky, Gerard O'Sullivan, Cara O'Sullivan, and Marilyn Costa (collectively, Objectors) have appealed an order of the Court of Common Pleas of Lackawanna County (trial court) that reversed a decision of the Glenburn Township Zoning Hearing Board (Zoning Board or Zoning Hearing Board) to deny Abington Little League, Inc. (Little League or Abington) a special exception for the installation of lighting at two of its baseball fields, along with a sound system. In reversing the Zoning Board, the trial court

imposed six conditions on the special exception that limited the hours that the lighting and sound system could be used. Little League, designated as cross-appellant, has appealed those conditions.[1] After review, we affirm the trial court's decision on the special exception and reverse the trial court's imposition of conditions on Little League's use of the lights and sound system.

### Background

Little League is a non-profit corporation that owns the Ackerly Fields Complex (Ackerly Fields), approximately 30 acres in size. Ackerly Fields consists of five baseball fields, dugouts, batting cages, a concession stand, a playground, an equipment shed, bleachers, parking facilities, a walking trail, and upgraded sewage disposal facilities. Portions of the complex remain undeveloped. Ackerly Fields is located in the M-1 District, Light Manufacturing. GLENBURN TOWNSHIP ZONING ORDINANCE, §201.1 (December 2003) (ZONING ORDINANCE); Reproduced Record at 80 (R.R.___).[2] The intent of the M-1 District is stated as follows:

> Based on location, existing uses and facilities, and the relationship to other land uses, to reserve those areas in the Township best suited for manufacturing and industry, uses with potential for greater community impact, and other offensive uses.

ZONING ORDINANCE, §201.2; R.R. 81. The Zoning Board described Ackerly Fields as "a grandfathered use in an M-1 zoning district." Zoning Board Remand Adjudication, 4/1/2019, at 6; R.R. 57.

---

[1] Objectors' and Little League's respective appeals were consolidated by Order of this Court dated January 20, 2022.

[2] Rule 2173 of the Pennsylvania Rules of Appellate Procedure specifies: "[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." PA. R.A.P. 2173. Because Objectors' Reproduced Record page numbers are not followed by a small "a," for ease of reference, this opinion refers to the reproduced record pages as numbered by Objectors.

In 2017, Little League sought a special exception from the Zoning Board to install lights on two of its five fields. Little League explained that the lights would be used for night games during the regular spring season, which runs from April through June. The lights would also be used for All-Star games one or two nights per week in June and July, with three games per week possible but unlikely. Finally, Little League would use the lights during Fall Ball, which occurs in September and October. Little League does not use its baseball fields from November to March.

In its application to the Zoning Board, Little League requested (1) a special exception because an outdoor lighting installation at a baseball field is not a use specifically allowed or denied in any zoning district;[3] (2) an interpretation of the outdoor lighting provisions in the Zoning Ordinance; and (3) in the alternative, a dimensional variance from the height limitation on the lighting poles should the Zoning Ordinance be construed to impose such a limitation. Little League sought to install six lighting poles on one of its larger fields and four lighting poles on one of its smaller fields. The poles on the larger field would be between 60 and 80 feet high, and the poles on the smaller field would be between 60 and 70 feet high. The light poles will use LED lights that will be directed downward to focus on the fields. The chosen lighting technology eliminates any glare and prevents almost all light from spilling beyond Little League property borders.

The Zoning Board referred the matter to the Township's Planning Commission, which considered the special exception at a meeting on May 25, 2017. At the meeting, Little League presented testimony from its president, Ryan

___

[3] The Zoning Ordinance provides that "[w]henever a use is neither specifically permitted nor specifically denied in any zoning district established under [the Zoning Ordinance] and an application is made to the Zoning Officer for such use, the application shall be submitted to the Zoning Hearing Board which shall have the authority to permit the use or deny the use as a special exception." ZONING ORDINANCE, §301.2A; R.R. 83.

3

Mitvalsky, and Robert Zoeller, a technical consultant with Musco Sports Lighting, an international company that specializes in lighting for sports facilities and stadiums. Zoeller is a member of the Illumination Engineering Society of North America and qualified as a lighting expert in six states. Zoeller testified that Little League Baseball guidelines are more stringent than those of the Illumination Engineering Society of North America, and Little League's proposal for Ackerly Fields meets the more stringent guidelines.

The Planning Commission voted unanimously to recommend denial of Little League's request for a special exception. The Planning Commission believed the Zoning Board lacked jurisdiction to consider Little League's application because baseball fields are a use permitted in a zoning district where private recreational facilities are authorized, and lighting is an accessory use to the principal use of a recreational facility.[4] Accordingly, the Planning Commission determined Little League's proposed lighting installation was not a use that could be permitted as a special exception. It also found that Little League's proposed light poles were not compatible with the existing, mainly residential, use in the surrounding area. As such, the proposal was not consistent with the purpose and intent of the Zoning Ordinance. In regard to the alternate request for a variance from the 25-foot height limitations, the Planning Commission found that Little League did not prove its proposal constituted the minimum variance needed.

---

[4] The Zoning Ordinance defines Private Recreational Facilities as follows:

> Outdoor or indoor areas of structures, operated by private non-profit or private commercial entities, open to the public, which may contain entertainment and amusement devices or attractions, including but not limited to picnic groves, animal farms, zoological parks, tennis and racquetball courts, ski areas, miniature golf courses, golf driving ranges, animal racing tracks, and the like, but excluding golf courses, theaters, public parks and playgrounds.

ZONING ORDINANCE, §1003 (Definitions); R.R. 235.

4

Thereafter, the Zoning Board held hearings on July 10, and August 16, 2017. Essentially adopting the Planning Commission's reasoning, the Zoning Board held that it did not have jurisdiction to grant a special exception request but, in any case, the grant of a special exception was not appropriate. The Zoning Board denied Little League's request for an interpretation of the lighting provision in the Zoning Ordinance, finding that Little League satisfied some, but not all, of the applicable standards. Finally, the Zoning Board held that Little League had not sustained its burden for a variance and denied this request as well.

Little League appealed the Zoning Board's decision to the trial court, which heard oral argument on February 2, 2018. On September 18, 2018, the trial court sustained Little League's appeal and remanded the matter to the Zoning Board.

Noting that a private ballfield is not included in, or excluded from, the Zoning Ordinance's definition of private recreational facilities, the trial court concluded that the Zoning Board erred in holding that it lacked jurisdiction over the special exception application. On the merits, the trial court also determined that the Zoning Board erred in concluding that Little League's proposed outdoor lighting project did not comply with Sections 601.8 E. (Nuisances) and 601.8 F. (Height) of the Zoning Ordinance.

The Zoning Ordinance states that the "standards of the Illuminating Engineering Society shall be used" for the design of a lighting installation. ZONING ORDINANCE, §601.8; R.R. 159. The trial court identified inconsistencies both in the Zoning Ordinance provisions on lighting standards and in the Zoning Board's analysis thereof. The trial court explained as follows:

> So on the one hand, we have an Ordinance requiring proposed projects to comply with specified standards and a project which complies with those standards. On the other hand, *we have a conclusion of the Zoning Board that a project complying with specifically mandated standards nonetheless violates the same*

5

*Ordinance*. Additionally, the Board found that Abington's proposal satisfied the requirements for shielding (601.8 C.) and glare (601.8 D.) (Findings and Conclusions, p. 35) but at the same time was somehow inadequate with respect to shielding (601.8 E. Nuisances). Additionally, Abington's proposal called for light standards ranging in height from 60-80 feet while the Ordinance lists a maximum height of light standards at 25 feet (with exceptions that do not apply here (601.8 F.)). *So in effect, the standards mandated by the Ordinance are in turn negated by the Ordinance*.

Trial Court Op., 9/18/2018, at 11; R.R. 47 (emphasis added). These inconsistencies in the Zoning Ordinance led the trial court to conclude that there was no applicable height limitation and, thus, a variance was not needed. It explained:

Since Abington employed the standards of the Illuminating Engineering Society, as it was required to do by the Zoning Ordinance, *see* Section 601.8 *Lighting and Glare*, and its proposal was consistent with the mandated standards with respect to the height of the poles, was a variance even necessary? We conclude that it was not.

Trial Court Op., 9/18/2018, at 12-13; R.R. 48-49. The trial court remanded the matter to the Zoning Board for further proceedings consistent with its opinion.

On remand, the Zoning Board conducted hearings over two days. On January 9, 2019, Mitvalsky and Zoeller again testified. In addition, Little League presented the testimony of Sue Savitski, a traffic engineer; Chris O'Boyle, a professional realtor and Little League board member; Scott Douglas Allen, a registered architect; and Robert Naegele, a civil engineer. On February 18, 2019, real estate appraiser Leonard Silvestri and Thomas Shepstone, a planning consultant, testified for Objectors, as did two Objectors, Lynn Sansky and David Druck. In rebuttal, Naegele testified.

Zoeller testified that Little League's proposal would not result in any light spillage beyond Ackerly Fields. Savitsky, who formerly worked for the Pennsylvania Department of Transportation performing traffic studies, testified that

6

there would be no significant impact on traffic caused by night games. O'Boyle testified that Little League's presence has had a positive effect on property values in the community, and that effect has continued even while Little League's special exception request has been pending. Allen testified that Little League's proposed use was similar to, and compatible with, other conditional uses listed for the M-1 Zoning District. Naegele testified that the storm water drainage was adequate and that the proposed lighting was a use consistent with, and even more desirable than, the other conditional uses authorized in the M-1 Zoning District. These uses range from bus terminals, detention facilities, and slaughterhouses, to solid waste facilities. *See* ZONING ORDINANCE §301.3; R.R. 84-87.

For Objectors, Silvestri, a real estate appraiser, testified that the lights may diminish property values in the nearby residential area by anywhere between 5% to 25%, given the potential for light trespass or spillover. Shepstone opined that Little League did not qualify for a special exception because its proposed use would not "be in harmony with the purposes, goals, objectives and standards of [the] Ordinance and other ordinances of the Township." ZONING ORDINANCE, §1108.4 (Standards and Criteria); R.R. 256. He recommended that a safety and environmental impact study be done. Lynn Sansky, who owns a home abutting the Little League property, testified that she can hear the games and see the fields from her deck. She expressed concern that her home will lose value if Little League's request were to be approved. David Druck testified about similar concerns and added that he does not want to hear Little League's night games. William Wicks, a neighborhood homeowner not affiliated with any party to the present action, testified that he was concerned about a reduction in the value of his property should Little League's request be approved.

On April 1, 2019, the Zoning Board again denied Little League a special exception, and Little League appealed to the trial court. On July 20, 2021, the trial court reversed the Zoning Board's remand adjudication, thereby allowing the installation of lighting, along with the accompanying sound system, at two of Little League's five baseball fields. In addition, the trial court imposed six conditions on the installation of lighting and a sound system.[5]

Objectors and Little League each appealed to this Court.[6]

---

[5] The trial court's order stated as follows:

> 1. Abington Little League, Inc. shall be permitted to install lighting on the two baseball fields identified in its application and more fully described in the testimony before the Glenburn Township Zoning Hearing Board, together with an accompanying sound system;
>
> 2. Abington Little League, Inc. shall take the necessary steps to plant additional trees, shrubs and other landscaping around the fields where the lighting will be installed to be adequate and sufficient to provide a visual and/or aural buffer between the Little League's property and the neighbors' properties;
>
> 3. The lighting and sound systems shall not be utilized on Sundays;
>
> 4. The lighting system may be used during the months of May, June, September and October and shall cease operation no later than 8:00 p.m. Monday through Thursday, and 9:30 p.m. on Friday and Saturday;
>
> 5. The lighting system may be used no more than twice weekly from Monday through Thursday during the months of May, June, September and October;
>
> 6. The sound system may be utilized for All-Star games and tournaments during June and July, but not for regular season games;
>
> 7. The lighting system will never be utilized during the months of January, February, March, November and December.

Trial Court Op., 7/20/2021, at 32-33; R.R. 32-33.

[6] "Where, as here, the trial court does not take additional evidence, this Court's review determines whether the Zoning Board committed an abuse of discretion or an error of law. An abuse of discretion will be found where the Zoning Board's findings of fact are not supported by substantial evidence." *Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677, 686 n.13 (Pa. Cmwlth. 2018) (citation omitted).

8

## Appeal

In their appeal, Objectors have raised three issues. First, they contend that Little League did not prove that its proposed use does not conflict with the intent of the M-1 Zoning District or the general purpose and intent of the Zoning Ordinance. Second, they contend that Little League did not prove that its proposed use of outdoor sports lighting is similar to and compatible with the conditional uses expressly allowed in the M-1 Zoning District. Third, they contend that assuming *arguendo* Little League established a basis for a special exception, the Zoning Board correctly held that the proposed outdoor lighting would be detrimental to the health, safety and welfare of the surrounding residential community, and the trial court erred in otherwise holding.

In its appeal, Little League presents one issue for this Court's review. It contends that the trial court erred and abused its discretion in setting limits on Little League's use of the lights and sound system.

## Analysis

## I.

In their appeal, Objectors first argue that Little League did not meet its burden under Section 301.2 of the Zoning Ordinance of proving that its proposed use does not conflict with the intent of the M-1 District and the general purpose of the Zoning Ordinance. These standards are drawn from Section 301.2(B) of the Zoning Ordinance, which requires the applicant for a special exception to show the following:

> B. Findings - The use may be permitted only if the Zoning Board makes all of the following findings; and, the burden of proof shall be upon the applicant:
>
>> 1. The use is similar to and compatible with the *uses listed* for the subject zoning district by the Schedule Regulations.

>2. The use in no way conflicts with the *intent of the zoning district* and the *general purpose* and intent of this Zoning Ordinance.
>
>3. The use is not permitted in any other zoning district.

ZONING ORDINANCE, §301.2(B); R.R. 83 (emphasis added). Objectors' first issue turns on the second requirement – the intent of the M-1 District and the general purpose of the Zoning Ordinance. *Id*.

In response, Little League argues that its burden was to satisfy the objective criteria for the conditional use, which then establishes a "presumption [] that the use is consistent with the health, safety and general welfare of the community." *Freedom Healthcare Services, Inc. v. Zoning Hearing Board of City of New Castle*, 983 A.2d 1286, 1291 (Pa. Cmwlth. 2009). It is not disputed that Little League satisfied the objective criteria in the Zoning Ordinance for the installation of outdoor lighting. As the trial court noted: "The [Zoning] Board did conclude that the standards of the Illuminating Engineering Society have been met with respect to [] Little League's proposal." Trial Court Op., 7/20/2021, at 25; R.R. 25. Little League argues that because the Zoning Ordinance requires applicants to show that the proposed use is in harmony with "the general purpose and intent of [the] Zoning Ordinance," it is too vague to be enforceable. It contends that under *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 912 (Pa. Cmwlth. 1980), a vague requirement of this type requires the opposition to the special exception to bear the burden of persuasion and proof. The Zoning Board erroneously required Little League to carry this burden. In any case, Little League argues that the trial court correctly held that the Zoning Board's adjudication was unsupported by the record or any cogent legal analysis.

With regard to the intent of the M-1 District, the Zoning Ordinance states as follows:

10

> M-1 Light Manufacturing[:] Based on location, existing uses and facilities, and the relationship to other land uses, to reserve those areas in the Township best suited for manufacturing and industry, *uses with potential for greater community impact, and other offensive uses.*

ZONING ORDINANCE, §201.2; R.R. 81 (emphasis added). The general intent and purpose of the Zoning Ordinance is stated as follows:

> This Ordinance is adopted in accordance with an overall land use control program and with consideration for the character of the municipality, its various parts and the suitability of the various parts for particular uses and structures. This Ordinance is enacted for the following purposes:
>
> > A. *To promote, protect and facilitate one or more of the following*: the public health, safety, morals, general welfare; coordinated and practical community development; density of population; . . . disaster evacuation, . . . the provisions of adequate light and air; police protection; vehicle parking and loading space; transportation; . . . reliable, safe and adequate water supplies; safe and adequate sewerage disposal, . . . and other purposes set forth in the Pennsylvania Municipalities Planning Code [(MPC)].[7]
> >
> > B. *To prevent one or more of the following*: overcrowding of land, . . . blight, danger and congestion in travel and transportation, loss of health, life or property from fire, flood, panic or other dangers.

ZONING ORDINANCE, §102; R.R. 77 (emphasis added). In short, the general purpose of the Zoning Ordinance is sometimes promotional and other times preventative.

In looking to "intent" and "purpose," the Zoning Board focused on whether outdoor lighting of a sports field was similar to, and compatible with, the conditional uses listed for the M-1 District, not whether it conflicted with the Zoning

---

[7] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

11

Ordinance's stated intent for the M-1 District. The stated intent of the M-1 District is to provide an area for "uses with potential for greater community impact[] and other offensive uses." ZONING ORDINANCE, §201.2; R.R. 81.

The trial court concluded that the Zoning Board's factual findings about the adverse impact from the proposed lighting system actually supported the conclusion that this use belonged in the M-1 District. Specifically, the Zoning Board found that "baseball under the lights has the potential for 'greater community impact' and, therefore, will be 'offensive' because of glare, noise and traffic in the evenings on which games are played." Trial Court Op., 7/20/2021, at 9; R.R. 9 (quoting Zoning Board Remand Adjudication, 4/1/2019, at 10; R.R. 61). Given the Zoning Board's finding on the "offense" and "greater community impact caused" by "baseball under the lights," the trial court concluded that "these fields are exactly where they ought to be," *i.e.*, in the M-1 District. Trial Court Op., 7/20/2021, at 9; R.R. 9. The M-1 District is specifically intended for "offensive uses." ZONING ORDINANCE, §201.2; R.R. 81.

As to the general purpose and intent of the Zoning Ordinance, ZONING ORDINANCE, §102(A), the Zoning Board concluded that public health, safety, general welfare, community development, density of population, adequate light and air, police protection, vehicle parking, transportation, and natural resources would be adversely impacted by the installation of Little League's lighting. Zoning Board Remand Adjudication, 4/1/2019, at 7-11; R.R. 58-62. The trial court rejected this conclusion as lacking any basis in the record. It explained as follows:

> *The proposed use has zero impact on the density of population and has nothing to do with community development. Likewise, there is no additional impact on light or air, parking or transportation or natural resources.* Any impact this activity visits is extant. All that is proposed is the addition of some lighting on two fields for the purposes of playing baseball on a limited number of evenings. *Baseball has been played on these*

12

*fields for years*.  Any impact it has had on public safety, general welfare, community development, density of population, adequate light and air, police protection, vehicle parking, transportation and natural resources has likewise been extant.

Trial Court Op., 7/20/2021, at 7-8; R.R. 7-8 (emphasis added).  In short, the absence of daylight has little or no impact on the matters sought to be promoted by the Zoning Ordinance.

As to the "preventions" set forth in Section 102(B) of the Zoning Ordinance, the trial court rejected the Zoning Board's conclusion that it was necessary to deny the special exception in order to prevent overcrowding of land, danger and congestion in travel, and loss of property from other dangers.  The trial court first noted that the Zoning Board did not explain how sports lighting relates to overcrowding, especially since lighting would be limited to two of the five baseball fields.  Second, because there are fewer games in the evening, the presence of lights could not have any effect on traffic congestion.  Third, the Zoning Board did not explain how "loss of property from other dangers" would result from baseball under the lights or even what those other dangers could be.  Trial Court Op., 7/20/2021, at 9-10; R.R. 9-10.

We discern no error in the trial court's analysis reversing the Zoning Board's conclusion that a lighted baseball field would deviate from the intent of the M-1 District or the general purpose of the Zoning Ordinance.  We agree with the trial court that there was no support in the record for the Zoning Board's legally erroneous conclusions.[8]  The Zoning Board erred and abused its discretion in holding

---

[8] Little League argues that under *Bray*, 410 A.2d 909, Section 301.2(B) is vague, and Objectors had the burden of coming forward with the evidence.  The trial court did not specify which party bore the burden of proof.  Rather, the trial court determined that the Zoning Board erred by reaching conclusions that were based on a misapplication of the law and a lack of the requisite support in the record.  Even if the Zoning Board incorrectly imposed the burden of proof on Little League, rather than Objectors, the outcome is the same.

13

that outdoor lighting of Little League's baseball fields did not satisfy the stated intent for the M-1 District and general intent and purpose of the Zoning Ordinance. ZONING ORDINANCE, §301.2(B); R.R. 83.

In their second issue, Objectors contend that Little League did not meet its burden of proving that its proposed outdoor sports lighting is similar to, and compatible with, the primary and conditional uses authorized in the M-1 District. They contend that the Zoning Board correctly concluded that the vehicles and light produced by the night use of the baseball fields would not be compatible with the primary use, *i.e.*, forestry, or any of the conditional uses contemplated for the M-1 District.

The conditional uses authorized for the M-1 District are varied. They include:

- Agricultural and food products processing
- Bulk fuel storage facilities
- Bus terminals
- Construction contractors, including storage of heavy equipment
- Crematoriums
- Detention facilities
- Junk yards
- Manufacturing, light
- Manufacturing and industry
- Natural resources processing
- Recyclable processing facilities
- Recycling collection facilities, large
- Slaughter houses
- Solid waste facilities, commercial
- Solid waste facilities, public
- Solid waste staging areas
- Truck terminals

14

- Warehouses

ZONING ORDINANCE, §301.3; R.R. 87.  The Zoning Board reasoned that none of the uses in this list "involve outdoor recreational activity at night, the use of 60-, 70- and 80-foot lights, nighttime gatherings of children, parents and coaches, vehicular and pedestrian traffic, nighttime activity and noise."  Zoning Board Remand Adjudication, 4/1/2019, at 7; R.R. 58.  Therefore, the Zoning Board concluded that lighted baseball fields were incompatible with the conditional uses authorized in the M-1 District.

The trial court rejected the Zoning Board's rationale, noting that even a cursory review of the authorized conditional uses revealed the Zoning Board's error.  The trial court explained as follows:

> Indeed, it is difficult to imagine the allowed uses, for example, bus terminals, detention facilities, truck terminals, warehouses, recycling facilities, slaughterhouses and solid waste facilities (both commercial and public) operating in the absence of people, vehicles, pedestrians, light and noise, day *and* night.  Moreover, there is nothing in the record to establish *any* numbers of people, children, vehicles, etc., expected with the proposed use in relation to the listed uses.

Trial Court Op. at 6-7; R.R. 6-7 (emphasis in original).  We agree.

Bus terminals, detention facilities and truck terminals necessarily generate the presence of people, vehicles, pedestrians, light, and noise.  They operate day and night.  The record is silent on the number of people, children, vehicles, and pedestrians, or the amount of light and noise, generated by lighted baseball fields relative to the conditional uses allowed in the M-1 District.  Simply, the Zoning Board's findings in this regard are not supported by substantial evidence.  As such, the Zoning Board erred and abused its discretion in concluding that Little League did not prove that its proposed use was similar to, or compatible with, the uses listed for the M-1 District.

15

In their third issue, Objectors argue that assuming *arguendo* that Little League established a right to a special exception, the Zoning Board properly concluded that the proposed use would be detrimental to the health, safety, and welfare of the surrounding community. They argue that the trial court erred in otherwise holding.

In granting a special exception, there must be a showing that the proposed use

> *shall not result in a substantial or undue adverse effect on* adjacent property, the character of the neighborhood, traffic conditions, parking, public improvements, public sites or rights-of-way, adjacent property values, or other *matters affecting the public health, safety, and general welfare*[.]

ZONING ORDINANCE, §1108.4; R.R. 256 (emphasis added). The Zoning Board determined that lighted baseball fields would adversely affect the public health, safety, and the general welfare because there would be additional light, noise, dust, and people, during the nighttime hours, which could require more police, fire, and emergency services. Specifically, it reasoned as follows:

> The adverse effect on adjacent property will involve additional light, noise, dust, people and traffic at night, which are additional times which have not previously been used by [] Little League. There will be an undue adverse, [sic] effect on the character of the neighborhood. With two fields lit at nighttime by multiple light standards, some of which rise to 80 feet, there will be additional light, noise, dust, people and traffic. This will change the rural aesthetic of both the Township and the neighborhood . . . . [A]s codified in the Zoning Ordinance, the Township has a rural, subdued aesthetic which is particularly available at night. It provides a place where residents, like [Objectors] who testified, a place of quiet, dark, inactivity, calmness and solemnity. *Youth baseball games at night on two fields are directly inapposite to and inconsistent with this calmness and solemnity.*

16

Zoning Board Remand Adjudication, 4/1/2019, at 12-13; R.R. 63-64 (emphasis added).

In reaching this conclusion, the Zoning Board rejected all of Little League's evidence and accepted all the evidence of Objectors. The Zoning Board explained that "Mr. Allen, Mr. O'Boyle, and Mr. Naegele, while well intentioned and well spoken, have children in Little League currently, which affects the objectiveness of their opinions." Zoning Board Remand Adjudication, 4/1/2019, at 13; R.R. 64. By contrast, the Zoning Board found Silvestri's opinion that real property values could fall anywhere from 5% to 25% persuasive over the opinion of Little League's appraisal expert that the ballfields had a salutary impact on property values. The Zoning Board characterized its decision as "objective" and "dispassionate." Zoning Board Remand Adjudication, 4/1/2019, at 25; R.R. 76.

The trial court rejected the Zoning Board's characterization of its work as "objective," noting that "[s]imply because the Zoning Board describes its decision as such does not make it so." Trial Court Op., 7/20/2021, at 31; R.R. 31. The trial court acknowledged the prerogative of the Zoning Board to make credibility determinations.[9] Nevertheless, the record must substantiate the Zoning Board's credibility determinations. Here, the Zoning Board erred in crediting witnesses whose opinions lacked a foundation in the record.

Where an expert opinion lacks a foundation in the record, it must be rejected as incompetent. Indeed, an expert opinion "is incompetent and may not be admitted into evidence if the expert's opinion is based upon mere conjecture." *Hussey v. May Department Stores, Inc.*, 357 A.2d 635, 637 (Pa. Super. 1976); *see also*, *e.g.*, *Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968) ("An expert cannot base

_____

[9] *See Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005) (stating that the zoning hearing board may reject testimony it finds lacking in credibility and may choose to believe one expert and not another).

17

his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgement based on mere conjecture."); *Somerset Welding and Steel v. Workers' Compensation Appeal Board (Lee)*, 650 A.2d 114, 118 (Pa. Cmwlth. 1994) (the supposed facts forming the basis of a medical expert's opinion must be proven by competent evidence).

Here, the Zoning Board credited the testimony of real estate appraiser Silvestri, even though he "offered *no method* in expressing his opinion about the rather broad range in diminution of values [he] applied" between 5% and 25%. Trial Court Op., 7/20/2021, at 29; R.R. 29 (emphasis added). Further, Silvestri conceded that he "did not do any appraisals on the properties." Notes of Testimony (N.T.), 2/18/2019, at 366, 370; R.R. 866, 870. He acknowledged that a full appraisal was necessary to assign a diminution in property value. Silvestri did not address Zoeller's testimony and expert report that the lights would not impact residential property values. Instead, Silvestri "in conclusory fashion," offered "a wide range of potential diminution in value" for the neighboring properties, painting "with the broadest of brushes." Trial Court Op., 7/20/2021, at 20; R.R. 20. When asked, for sake of comparison, about the potential impact of bus terminals, junk yards, and slaughterhouses on neighboring residential property values, Silvestri testified "I don't have an opinion." N.T. 363; R.R. 863.

The trial court concluded that Objectors' witnesses and experts established that they *do not want* Little League's lights, but it is "not up to the neighbors" to decide. Trial Court Op., 7/20/2021, at 28; R.R. 28. They did not show, with probative evidence, that lighted baseball fields had an impact on property values that was greater than the impact of junk yards and slaughterhouses.

We discern no error in the trial court's analysis that the Zoning Board erred and abused its discretion in relying upon evidence that did not demonstrate

more than "unsubstantiated concerns or vague generalities[.]" *Siya Real Estate LLC v. Allentown City Zoning Hearing Board*, 210 A.3d 1152, 1160 (Pa. Cmwlth. 2019). Objectors had to show "a high degree of probability" that the lighted fields will adversely impact the health and safety of the community, and they did not. *Marr Development Mifflinville, LLC v. Mifflin Township Zoning Hearing Board*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017). Objectors' stated concerns about property values and aesthetics did not establish an adverse impact on the general welfare of the Township.

We hold that the trial court properly rejected the Zoning Board's adjudication as not supported by the record and based upon erroneous conclusions of law. The trial court issued its holding without addressing Little League's contention that Objectors bore the burden of proving, with a high degree of probability, that approval of Little League's application for a special exception was not in harmony with the intent and purposes of the Zoning Ordinance. Because we discern no error in the trial court's conclusion that the Zoning Board's findings of fact were not supported by substantial evidence and its legal conclusions erroneous, there is no need for us to decide Little League's contention that *Bray*, 410 A.2d 909, required the Zoning Board to place the burden of proof on Objectors.

We affirm the order of the trial court that the Zoning Board erred and abused its discretion in denying Little League's application for a special exception.

## II.

In its appeal, Little League challenges the trial court's conditions on the use of the lights and sound system. It contends that they are not supported by the record. Rather, the trial court imposed conditions in an effort to bring the "saga" to an end. Little League Brief at 38.

The MPC authorizes the imposition of conditions upon the approval of a special exception. Section 912.1 of the MPC states as follows:

Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. *In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance*, as it may deem necessary to implement the purposes of this act and the zoning ordinance.

53 P.S. §10912.1 (emphasis added). A zoning board's conditions may be imposed to "mitigate any potential adverse impacts from the proposed use[.]" *In re Maibach, LLC*, 26 A.3d 1213, 1216 (Pa. Cmwlth. 2011). The MPC specifically authorizes the "governing body" of a municipality to impose conditions, but it does not authorize a court of common pleas to do so as part of a land use appeal.

On the other hand, Section 1006-A(a) of the MPC does authorize the trial court to modify a zoning board "action, decision or order."[10] Here, because the Zoning Hearing Board denied the special exception requested by Little League, the trial court was not presented with a decision that imposed any conditions. As we have explained:

Inasmuch as the adjudication of the Board was a denial of a special exception, the court could reverse the action of the Board, but it then had nothing before it to modify. *We do not interpret the word "modify" in Section 1009*[11] . . . *to mean that the court*

---

[10] Added by the Act of December 21, 1988, P.L 1329. It states:

In a land use appeal, *the court shall have power to* declare any ordinance or map invalid and set aside or *modify any action, decision* or order of the governing body, agency or officer of the municipality brought up on appeal.

53 P.S. §11006-A(a) (emphasis added).

[11] Section 1009 of the MPC, Act of July 31, 1968, P.L. 805, repealed by the Act of December 21, 1988, P.L. 1329, provided, in relevant part, that on an appeal from a zoning board of adjustment:

The final decision shall contain conclusions of law, and: (1) Where the appeal is from the decision of the board, the court may reverse, affirm or modify the decision appealed.

> *could reverse the Board's denial and thereafter impose its own restrictions* and conditions upon the special exception . . . . [I]t is the local zoning officials who have the knowledge of local circumstances who should establish the conditions to be applied to special exceptions.

*Butler v. Derr Flooring Company*, 285 A.2d 538, 543 (Pa. Cmwlth. 1971) (emphasis added). In sum, the trial court's power to "modify" does not include the power to impose its own conditions when it reverses a zoning board's denial of a special exception.

Here, the trial court reversed the determination of the Zoning Board. As such, there were no conditions in the Zoning Board adjudication for the court to "modify." Moreover, the trial court was acting in its appellate capacity, reviewing the Zoning Board's decision for error of law. The record lacked any factual evidence that would support the landscaping requirements and limits on hours of use as conditions on the special exceptions that were imposed by the trial court.

For these reasons, we reverse the trial court's imposition of conditions.

## Conclusion

For all of the above reasons, the trial court's order is affirmed, in part, and reversed, in part. It is affirmed to the extent it reverses the Zoning Board's denial of Little League's Application for Special Exception. It is reversed to the extent it imposes conditions on Little League's proposed use.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

*formerly* 53 P.S. §11009. Section 1006-A(a) of the MPC replaced *former* Section 1009 of the MPC.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Abington Little League, Inc. | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 895 C.D. 2021 |
| | : | |
| Glenburn Township Zoning Hearing Board | : | |
| | : | |
| Appeal of: David Druck, Marilyn Druck, Charles Sansky, Lynn Sansky, Gerard O'Sullivan, Cara O'Sullivan, and Marilyn Costa | : | |
| | : | |
| Abington Little League, Inc., Appellant | : | |
| | : | |
| v. | : | No. 925 C.D. 2021 |
| | : | |
| Glenburn Township Zoning Hearing Board | : | |

# **O R D E R**

AND NOW, this 7th day of March, 2023, the July 20, 2021, Order of the Lackawanna County Common Pleas Court is AFFIRMED in part and REVERSED in part. The Order is affirmed to the extent it reverses the Glenburn Township Zoning Hearing Board's denial of Abington Little League, Inc.'s Application for Special Exception. The Order is reversed to the extent it imposes conditions on Abington Little League, Inc.'s use of its facilities.

_____
MARY HANNAH LEAVITT, President Judge Emerita