# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Quaker Valley School District | : | |
| | : | |
| v. | : | No. 1474 C.D. 2022 |
| | : | ARGUED: October 10, 2023 |
| | : | |
| Leet Township Zoning Hearing Board, | : | |
| Leet Township, William Jasper, | : | |
| Michelle Antonelli, and Leet Township | : | |
| Municipal Authority | : | |
| | : | |
| Appeal of: William Jasper and | : | |
| Michelle Antonelli | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  January 26, 2024**

Objectors, William Jasper and Michelle Antonelli, appeal from an order of the Court of Common Pleas of Allegheny County which reversed a decision of the Leet Township Zoning Hearing Board (ZHB) that had denied Quaker Valley School District's (QVSD) application for a special exception. Upon review, we affirm.

## I.  Background

The pertinent facts are as follows. QVSD owns approximately 108 acres of land located at 200-210 Camp Meeting Road within Leet Township's AAA Residence Zoning District (AAA District). ZHB's Findings of Fact (F.F.) 3; Reproduced Record (R.R.) at 10a. The property "is situated at the top of a steep hill consisting in part of landslide-prone Pittsburgh Red Bed clay that is common

throughout Western Pennsylvania." *Id.* Both Objectors own property and residences in close proximity to, and downhill from, QVSD's property.

A school is a use permitted by special exception in the AAA District pursuant to Section 27-301 of the Leet Township Zoning Ordinance. Leet Twp., Allegheny Cnty., Pa., Zoning Ordinance § 27-301 (1978). As such, QVSD filed an application for a special exception seeking to construct a new public high school on the property under Township Ordinance No. 2019-02.[1] F.F. 1; R.R. at 10a. Approximately 650 students will attend the school and about 47 of the 108 acres will be cleared for the project. F.F. 2, 4; R.R. at 10a. While the school will be served by only one road – Camp Meeting Road – the preliminary plans call for two access driveways off that road and into the school. F.F. 7-8; R.R. at 11a.

The ZHB held multiple hearings on the application between June 2021 and February 2022.[2] The following witnesses testified on behalf of QVSD: licensed professional engineer and traffic expert Charles Wooster; engineer, program manager, and feasibility expert Jon Thomas; and licensed professional engineers Geoffrey Phillips and Joseph Boward. QVSD submitted into evidence, among other things, Mr. Wooster's initial traffic impact study and rebuttal report, and Mr. Thomas's expert report.

---

[1] On March 11, 2019, the Leet Township Board of Commissioners passed Ordinance No. 2019-02, which provides the requirements for special exceptions within the Township. *See* R.R. at 35a. Ordinance No. 2019-02 repealed in its entirety and replaced former Chapter 27, Part 6 of the Leet Township Zoning Ordinance pertaining to special exceptions. *Id.*

[2] It bears noting that at multiple times during the lengthy ZHB proceedings, QVSD's counsel objected to the scope and subject matter of the testimony and evidence presented, arguing that it went beyond the issue of the property's use and the parameters of the application for special exception, treading into development issues and details, consideration of which lies with the Planning Commission and Township Commissioners during the project's land development phase. *See* R.R. at 28a.

Objectors, who were represented by counsel, presented testimony and evidence in opposition to the application, including the testimony and expert report of James French, a licensed engineer and traffic expert. Numerous residents testified throughout the hearings, some in support of the application and many in opposition. Those opposed to the application, including Objectors, cited such concerns as increased traffic, the steepness and poor sight lines of Camp Meeting Road, diminution of property values, and the enhanced risk of accidents due to the volume of teenage drivers on what Objectors characterized as an already problematic roadway. Objectors also voiced environmental concerns due to the proposed leveling of the hilltop site and clear cutting of woodlands, and the risk of landslides due to the topography and geography of the site and the blasting that would most likely be involved during construction of the school.[3]

The ZHB subsequently issued its decision denying the application for special exception, along with findings of fact, conclusions of law, and a statement of reasons for the decision. R.R. at 1a-34a.[4] The ZHB stressed the concerns raised "that Camp Meeting Road was already congested during times of shift changes at nearby employers and that, with the addition of two-third[s] more student drivers and school buses [], first responders would be delayed in reaching the school" in the event of an emergency. R.R. at 21a. The ZHB determined that QVSD's failure to

---

[3] Leetsdale Borough initially objected to the application. As counsel for the Borough explained during the ZHB's October 26, 2021 public hearing, the Borough engaged in discussions with QVSD given concerns regarding the impact the proposed school use could have on downhill neighbors. Following these discussions, QVSD and the Borough entered into a Mutual Cooperation Agreement (MCA) outlining various agreed-upon conditions. The Borough subsequently withdrew its objection to the application subject to the conditions approved through the MCA.

[4] While not explicitly stated, it is apparent from the ZHB's statement of reasons for decision that it found the testimony of QVSD's experts to be credible. *See* R.R. at 30a-34a.

3

implement an emergency management plan that included an emergency only road (EOR) created substantial risks to public safety and welfare, and that such risks were abnormal for a school use. *See* R.R. at 23a-24a. Among the ZHB's findings of fact were the following:

> 10. The current high school has two roads serving it – Ohio River Boulevard and Beaver Street – that are available to first responders.
> . . . .
>
> 12. First responder delays of minutes or seconds in reaching the school can cost students and faculty members their lives.
> . . . .
>
> 15. *No first responders or emergency management experts testified.*
> . . . .
>
> 25. Based on Mr. Wooster's testimony, Mr. Thomas's testimony, and the objectors' testimony on the EOR issue, [the] ZHB determined [i]t is an abnormal risk for a school not to implement an emergency management plan that included an EOR *if reasonably recommended by the first responders*.
>
> 26. If a public high school's emergency management plan does not include an EOR reasonably recommended by first responders, the risks to public safety and welfare will be substantial, serious, highly probable and virtually certain, and will be abnormal for a school.
>
> 27. On February 9, 2022, [the] ZHB made its public oral decision denying the application but giving QVSD [30] days to amend the application with regard to the EOR.
>
> 28. Also on February 9, 2022, [the] ZHB announced [that] if an EOR amendment were made to the application, then it would convert the denial into an approval subject to the condition that the EOR would be implemented *if and as*

*reasonably recommended by first responders*, and subject to several other conditions involving safety measures for landslides, water runoff, Camp Meeting Road, insurance, monitoring of conditions[,] and other matters unrelated to the EOR.

. . . .

34. QVSD responded that it would commit to collaboration with first responders and to considering their recommendations in its plan. It stopped abruptly short of committing to implement the first responders' reasonable recommendations concerning an EOR.

F.F. 10, 12, 15, 25-28, 34 (emphasis added); R.R. at 11a, 13a-14a. The ZHB also issued 13 conclusions of law, including:

2. It is an abnormal risk for a school not to implement an emergency management plan that included an []EOR[] *if reasonably recommended by the first responders*.

3. If an EOR reasonably recommended by first responders is not implemented by []QVSD[], the risks to public safety and welfare would be substantial, serious, highly probable[,] and virtually certain.

4. [The] Township's special exception ordinance [Ordinance No. 2019-02] shifts the burden of persuasion in proving issues addressing risks to health, safety[,] and welfare from the objectors to the applicant as permitted by law.

5. The EOR issue is [a] matter of health, safety[,] and welfare.

6. QVSD failed to meet its burden of persuasion to prove that, if first responder reasonable EOR recommendations were not implemented, the risks would nevertheless be normal for a school without a resulting serious and highly probable risk of harm to public health, safety[,] and welfare.

5

7. Applicable case law does not permit a zoning hearing board to use a condition to rectify a failure to meet a burden of proof and, as a result, [the] ZHB could not simply grant the application with the EOR condition attached. Instead, it had to deny the application altogether. And even if [the] ZHB was mistaken about the burden shifting, [O]bjectors satisfied the burden of persuasion.

8. *The school will be a regular public high school with a normal curriculum and normal extra-curricular activities and sports*.

Conclusions of Law (COL) 2-8 (emphasis added); R.R. at 16a-17a.

The ZHB's decision explains that had QVSD agreed to amend its application to include the EOR provision, the ZHB would have approved the application with certain conditions. R.R. at 1a. These conditions include conducting a full watershed impact study and complying with its recommendations; naming the downhill property owners in QVSD's general liability insurance policy as direct additional insureds for personal injury and property damage resulting from landslides and water runoff caused by the project; monitoring of serious traffic accidents on Camp Meeting Road and monitoring to check for earth movement on the site for three years after construction of the project is completed; and implementing all of the conditions and safeguards "recommended" by QVSD's experts during their testimony before the ZHB. R.R. at 1a-3a.

QVSD appealed to the trial court, and the Township, Objectors, and the Leet Township Municipal Authority intervened. Without taking additional evidence, the trial court reversed the ZHB's decision. The trial court explained that while the previous Ordinance provision expressly required that certain conditions be met to grant a special exception, Ordinance No. 2019-02 does not set forth *any* specific or general criteria for review of an application for special exception and

6

merely requires that an application address certain topics. Trial Ct. Op. 11/28/22 at 3. As such, it was improper for the ZHB to require QVSD to include an EOR provision in its application.

The trial court further determined that "[t]he record lacks evidence to support the [ZHB]'s finding that the failure to provide an [EOR] would, to a high degree of probability, pose a substantial threat to the health, safety[,] and welfare of the community beyond what would normally be expected by use of the [p]roperty for a school." *Id.* The ZHB incorrectly applied the burden of proof as to general welfare because "objectors must *first* raise an objection showing to a high degree of probability that the use as a school may cause a substantial harm beyond what is normally expected, and that the impact would pose a substantial threat to the community. This burden may not be shifted by the ordinance." *Id.* at 4 (emphasis added) [citing *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980)]. While "recogniz[ing] that implementing an emergency plan is a legitimate concern to members of the community," the trial court reasoned that "the [EOR] is a matter to be addressed as part of the land development process, not zoning use approval." *Id.* at 5. Objectors now appeal to this Court.[5]

## II. Issues

At bottom, Objectors argue that the ZHB did not commit an error of law or abuse of discretion in reaching its decision and, therefore, the trial court's

---

[5] The ZHB filed a notice of non-participation with the Court on May 9, 2023. In addition, the Court issued an order precluding the Township and the Leet Township Municipal Authority from filing briefs and participating in oral argument given their failure to file briefs in compliance with previous orders. As such, Objectors, William Jasper and Michelle Antonelli, are the only remaining appellants participating in this matter.

order should be reversed.[6]   The specific issues identified by Objectors can be distilled to the following: (1) whether Ordinance No. 2019-02 imposes *any* specific criteria that must be met to grant an application for a special exception; (2) whether Ordinance No. 2019-02 shifts the burden from Objectors to QVSD regarding issues affecting the health, safety, and welfare of the community; (3) whether the parties met their respective burdens; and (4) even if the trial court correctly held that the ZHB erred or abused its discretion in denying QVSD's application for a special exception, whether the trial court erred by granting the application without imposing the conditions that the ZHB would otherwise have imposed, including the EOR.  *See* Objectors' Br. at 7-8.

### III. Analysis

As for the first issue raised by Objectors, "the primary objective of interpreting ordinances is to determine the intent of the legislative body that [passed] the ordinance.  In pursuing that end, we are mindful that a statute's plain language generally provides the best indication of legislative intent." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509 (Pa. Cmwlth. 2014) (citations omitted).  Moreover,

> [t]he rules of statutory construction are applicable to statutes and ordinances alike.  One of the primary rules of statutory construction is that an ordinance must be construed, if possible, to give effect to all of its provisions.  An interpretation of an ordinance which produces an absurd result is contrary to the rules of statutory construction.

---

[6] Where, as in the present case, "the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion.  A zoning board abuses its discretion only if its findings are not supported by substantial evidence." *Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1156 n.3 (Pa. Cmwlth. 2019) (quotations omitted).

8

*In re Thompson*, 896 A.2d 659, 669 (Pa. Cmwlth. 2006) (internal citations omitted).

We begin, as we must, with the plain language of Ordinance No. 2019-02 and its predecessor. As mentioned in footnote one, *supra*, in 2019 the Township repealed and replaced former Chapter 27, Part 6 of the Ordinance pertaining to special exceptions with the current Ordinance No. 2019-02. The relevant repealed provision of the Ordinance expressly required that certain conditions be met. It stated, in pertinent part: "The following additional requirements *must be met* for the granting of a [s]pecial [e]xception." QVSD's Br. at 10, Appendix A (emphasis added). The ordinance applicable here, Ordinance No. 2019-02, in contrast, contains no such express language. Instead, under the heading "procedures for approval," it provides as follows:

> 2. Approval of uses by special exception. The Z[HB] shall hear and decide requests for uses by special exception. The Z[HB] shall not approve an application for a use by special exception unless and until:
>
> A. A written application for approval of a use by special exception is submitted to the Township. The application shall indicate the section of this chapter under which approval of the use by special exception is sought and shall state the grounds upon which it is requested. The application shall include the following . . . .

R.R. at 38a. Ordinance No. 2019-02 then lists 13 items to be included in an application for special exception, such as a current property survey, the application fee, and a traffic impact study when appropriate. R.R. at 38a-39a. What Ordinance No. 2019-02 does *not* include is express criteria which must be considered by the ZHB when reviewing an application for special exception.

Importantly, Ordinance No. 2019-02 also contains several subsections devoted to particular special exception uses – such as motels, gasoline stations and

9

automobile dealerships, and mobile home parks – and enumerates very specific criteria that are to be considered for each use. For example, subsection 2 states that motels are permitted in certain zoning districts provided that 8 express requirements are met, including that no part of the building exceeds 2 stories, no more than 40% of the ground area on the lot is occupied by buildings, and no building is set nearer than 50 feet to the front, side, and rear lot lines, etc. R.R. at 40a-41a. Importantly, a school is *not* one of the uses for which explicit conditions are delineated.

Given the plain language of Ordinance No. 2019-02 – which was enacted by the Township within the last five years and which removed the explicit conditioning language of the former Ordinance provision – as well as the absence of a particular subsection discussing a school use, we must agree with the trial court that there simply are no specific requirements for the granting of a special exception for a school use. Unless the proposed special exception use is one for which there is a subsection enumerating express criteria, Ordinance No. 2019-02 merely provides what must be included in an application before it can be considered by the ZHB.[7]

The remaining issues Objectors raise concern where the burdens lie with respect to the general criteria of detriment to health, safety, and public welfare, and whether those burdens have been met. Objectors point to subsection 2.D of Ordinance No. 2019-02, which states:

> D. In proceedings involving a request for a use by special exception, both the duty of initially presenting evidence and the burden of persuading the Z[HB] that the proposed use is available by special exception and satisfies the specific or objective requirements for the grant of a use by

---

[7] There is no allegation that the application was in any way deficient. Further, it is undisputed that Ordinance No. 2019-02 does not mention an EOR.

special exception as set forth in this chapter rest upon the applicant. *The burden of persuading the Z[HB] that the proposed use will not offend general public interest, such as the health, safety[,] and welfare of the neighborhood, rests upon the applicant.*

R.R. at 39a (emphasis added). Objectors maintain that the explicit language of subsection 2.D places the burden of persuasion regarding health, safety, and welfare on QVSD as the applicant, not on Objectors, and that QVSD failed to meet this burden. In support of their argument, they cite this Court's decisions in *Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759, 764 n.6 (Pa. Cmwlth. 2007), and *Greaton Properties, Inc. v. Lower Merion Township*, 796 A.2d 1038, 1046 (Pa. Cmwlth. 2002). Objectors' argument, however, glosses over the preliminary issue of whether they met their *own* evidence presentation burden.

As we have repeatedly explained, despite its name, "[a] special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance . . . are met[.]" *In re Thompson*, 896 A.2d at 670. *See also Greaton*, 796 A.2d at 1045. Generally, "an applicant for a special exception has both the duty of presenting evidence and the burden of persuading the board that his proposed use satisfies the *objective* [*or specific*] requirements of the zoning ordinance for the grant of a special exception." *Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019) (quotation omitted) (emphasis added). Once the applicant meets its burden of proof and persuasion regarding the objective requirements, "a presumption arises that [] the proposed use [] is consistent with the health, safety[,] and general welfare of the community." *Id.* (quotation omitted). As explained above, there are no objective requirements for a special exception within

11

Ordinance No. 2019-02. Therefore, it is presumed that QVSD's proposed use of the property as a school is consistent with the health, safety, and general welfare of the community. "The burden then normally shifts to the objectors to the application to present evidence and persuade the [zoning hearing] board[] that the proposed use will have a generally detrimental effect on health, safety, and welfare." *Id.* (quotation omitted). *See also Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017) (*en banc*).

Objectors correctly assert that, in some instances, the express language of a zoning ordinance can alter the parties' respective burdens in the context of an application for special exception. *See, e.g.*, *Siya*, 210 A.3d at 1157; *Bray*, 410 A.2d at 912-13. However, regarding general detriment to the health, safety, and welfare of the community, this Court has repeatedly explained that the express terms of an ordinance "can place the burden on the applicant but cannot shift the duty." *Siya*, 210 A.3d at 1157 (citations omitted). Stated differently,

> [w]here, as here, [] the ordinance specifically places the burden on the applicant to show that the proposed use will not have a detrimental effect, **the applicant only retains the burden of persuasion. Objectors still retain the *initial* presentation burden with respect to the general matter of the detriment to health[,] safety, and general welfare**.

*Greaton*, 796 A.2d at 1046 (emphasis added) [citing *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 70 (Pa. Cmwlth. 1991)]. *See also Siya*, 210 A.3d at 1160; *Bray*, 410 A.2d at 912 ("The objectors have the initial evidence presentation duty with respect to the general matter of detriment to health, safety[,] and general welfare, even if the ordinance has expressly placed the

12

persuasion burden upon the applicant, where it remains *if* detriment is identified.") (emphasis added).

Here, the ZHB correctly determined that the language of subsection 2.D of Ordinance No. 2019-02 shifts the burden of persuasion to QVSD with respect to the health, safety, and general welfare of the community. *See* R.R. at 39a. However, this determination is of no moment here as Objectors retain the *initial evidence presentation duty* in this regard, a duty which cannot be shifted by a zoning ordinance. *See, e.g.*, *Siya*; *Greaton*; *Bray*.[8]

This initial "burden placed on the objectors is a heavy one." *Marr Dev. Mifflinville, LLC*, 166 A.3d at 483. Crucial to the present matter, "[t]he evidence presented by objectors must show, to a high degree of probability, that the use will generate adverse impacts *not normally generated by this type of use* and that these impacts will pose a substantial threat to the health and safety of the community." *Siya*, 210 A.3d at 1157 (quotation omitted) (emphasis added); *see also In re Thompson*, 896 A.2d at 679 (citing *Manor Healthcare Corp.*). Moreover, the "[o]bjectors must demonstrate more than unsubstantiated concerns or vague generalities, and mere speculation as to possible harm is insufficient." *Siya*, 210 A.3d at 1160 (quotation omitted).

Again, Ordinance No. 2019-02 contains no objective criteria for a special exception and, therefore, a presumption arose that QVSD's proposed use is consistent with the health, safety, and general welfare of the community. As such, Objectors bore the initial burden of rebutting this presumption. If, *and only if*,

---

[8] Despite Objectors' argument, the trial court did *not* hold that a zoning ordinance cannot shift the burden of persuasion. To the contrary, the trial court properly stated and applied the parties' respective burdens here in keeping with both Ordinance No. 2019-02 and our courts' precedent.

Objectors satisfied this initial hurdle would the burden then shift to QVSD. *See, e.g.*, *Siya*; *Bray*.

The crux of the ZHB's decision, truly the singular reason for its denial,[9] is the fact that QVSD's application for a special exception does not include an EOR for access to the school in case of an emergency. Specifically, the ZHB found: "If a public high school's emergency management plan does not include an EOR *reasonably recommended by first responders*, the risks to public safety and welfare will be substantial, serious, highly probable and virtually certain, and will be abnormal for a school." F.F. 26; R.R. at 13a (emphasis added).[10] We agree with the trial court that the record lacks substantial evidence to support this determination.

First, the ZHB's holding is premised purely on speculation as "[n]o first responders or emergency management experts testified," F.F. 15; R.R. at 11a, let alone *recommended* that failure to include an EOR presented an abnormal risk for a

---

[9] Indeed, the ZHB found that Objectors did not prevail on their assertions that the increased traffic, water-runoff, and landslide potential due to QVSD's proposed school use presented an abnormal risk for this type of use, or that the risk of serious injury to the public was "highly probable or a virtual certainty." R.R. at 31a; *see also* R.R. at 30a. We discern no error in this regard.

By way of brief explanation, Objectors testified generally about the potential for more accidents given the topography of Camp Meeting Road and the increased numbers of young, inexperienced drivers that would frequent the roadway. "However, 'an increase in traffic is generally not grounds for denial of a special exception unless there is a high probability that the proposed use will generate traffic not normally generated by that type of use and that the abnormal traffic threatens safety." *Marr Dev. Mifflinville, LLC*, 166 A.3d at 484 [quoting *Accelerated Enters., Inc. v. The Hazle Twp. Zoning Hearing Bd.*, 773 A.2d 824, 827 (Pa. Cmwlth. 2001)]. Objectors' speculative testimony regarding teenage drivers fails to meet this standard and, at all events, would apply to any ordinary high school. Their general concerns regarding potential increased risk of landslides and water-runoff issues suffer the same deficiency.

[10] *See also* COL 2; R.R. at 16a ("It is an abnormal risk for a school not to implement an emergency management plan that included an []EOR[] if reasonably recommended by the first responders.").

14

proposed school use. Objectors' assertion that the testimony of QVSD's own witnesses supports the ZHB's determination regarding an EOR is simply without merit. To the contrary, our review of the record reveals that QVSD's witnesses clearly stated they had not consulted any first responders or emergency management experts when preparing their reports. Moreover, QVSD's witnesses reiterated time and again that the site and proposed plan is safe, there is nothing unique about Camp Meeting Road, and they do not have any additional concerns for neighboring property owners above and beyond those normally inherent when a new school is built.[11] As QVSD's witnesses also explained, the ZHB's finding is premature since we are not at the land development stage and an emergency management plan for the proposed school has yet to be developed. *See In re Thompson*, 896 A.2d at 670 (noting well established principle that special exceptions involve only the proposed use of land, not the particular details of the design and development).

Further undermining the ZHB's determination is its own conclusion, which is amply supported by the record, that QVSD's proposed "school will be a regular public high school with a normal curriculum and normal extra-curricular activities and sports." COL 8; R.R. at 17a. Such a conclusion is directly at odds with the ZHB's ultimate decision. The conclusion also prevents Objectors from

---

[11] *See, e.g.*, Notes of Testimony (N.T.) 8/20/21 at 17 (testimony of licensed professional engineer Geoffrey Phillips that the site can be safely developed as a school); N.T. 7/15/21 at 76 (testimony of traffic expert Charles Wooster that the traffic generated from this school would not be any greater than the traffic that would be expected from any other typical high school); *id.* at 184 (testimony of Mr. Wooster: "I wouldn't say there is anything that unique about [] this location."); *id.* at 198-99 (testimony of Mr. Wooster indicating he does not have any additional concerns for neighboring property owners above and beyond those normally inherent when a new school is built); *id.* at 203 (opinion of Mr. Wooster that when and if QVSD's proposed school is built, Camp Meeting Road will not be materially more dangerous or materially more inconvenient than it is now).

meeting their evidence presentation burden, that QVSD's proposed school use will generate adverse impacts *not normally generated* by this type of use.

Simply put, there is no evidence in the record that an EOR is required, let alone that failure to provide an EOR will, to a high degree of probability, generate adverse impacts to public health, safety, and welfare *not normally generated by* a school use. *See Siya*, 210 A.3d at 1157. Objectors' testimony and evidence "amounted to allegations of mere possibilities and fell far short of the high degree of probability standard necessary to sustain" their heavy burden of going forward. *Manor Healthcare Corp.*, 590 A.2d at 71. Therefore, the burden never switched to QVSD and the ZHB abused its discretion in determining otherwise. *See id.* at 70.

Finally, Objectors argue that even if the trial court correctly held that the ZHB erred in denying QVSD's application for a special exception, the trial court should have imposed the conditions the ZHB would have required for the proposed school use. Objectors maintain that the ZHB was well within its authority to place conditions on approval of the special exception as subsection 2.E of Ordinance No. 2019-02 states: "In considering an application for approval of a use by special exception, the Z[HB] may prescribe appropriate conditions and safeguards in conformity with the spirit and intent of this article." R.R. at 39a.

Objectors' argument neglects the remainder of subsection 2.E of Ordinance No. 2019-02, which states: "A violation of such conditions and safeguards, when made a part of the terms and conditions *under which approval of a use by special exception is granted*, shall be deemed a violation of this chapter." *Id.* Objectors similarly fail to address Section 912.1 of the Pennsylvania Municipalities Planning Code, which provides that "[*i*]*n granting a special exception*, the [zoning hearing] board may attach such reasonable conditions and

16

safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance." Act of July 31, 1968, P.L. 805, *as amended*, added by Section 91 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10912.1. Here, the ZHB obviously *denied* QVSD's application for a special exception. Moreover, the conditions it would have imposed were premised upon QVSD amending its application to include an EOR, among other things, not on the application that was currently before it. As such, the conditions the ZHB theoretically would have imposed *if* QVSD had amended its application and *if* the ZHB had granted the application are a legal nullity.

In addition, the conditions themselves seem to constitute development issues rather than zoning use issues. As stated earlier, it is well established that "[s]pecial exception . . . proceedings involve only the proposed use of the land, and do not involve the particular details of the design of the proposed development." *In re Thompson*, 896 A.2d at 670 [citing *Schatz v. New Britain Twp. Zoning Hearing Bd. of Adjustment*, 596 A.2d 294, 298 (Pa. Cmwlth. 1991) ("Zoning only regulates the *use* of land and not the particulars of development and construction.") (emphasis in original)]. As such, the specific details regarding development and construction outlined in the ZHB's proposed conditions should be addressed further along in the land development and permitting process. *See Elizabethtown/Mt. Joy*, 934 A.2d at 768 (citing *Schatz*). Simply, the ZHB's proposed conditions do not relate to requirements under the Ordinance, but instead are essentially the ZHB's attempt to control development issues.

## IV. Conclusion

In sum, we agree with the trial court that the ZHB's decision, specifically the determination regarding an EOR, was based on speculation and is not supported by substantial record evidence. Accordingly, we affirm the trial court.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quaker Valley School District : 
 : 
v. : No. 1474 C.D. 2022
 : 
Leet Township Zoning Hearing Board, : 
Leet Township, William Jasper, : 
Michelle Antonelli, and Leet Township : 
Municipal Authority : 
 : 
Appeal of: William Jasper and : 
Michelle Antonelli : 

# **O R D E R**

AND NOW, this 26th day of January, 2024, the order of the Court of Common Pleas of Allegheny County is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita