# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marr Development Mifflinville, LLC,    :
                       Appellant    :
                                   :
              v.                 :   No. 2681 C.D. 2015
                                   :   Argued: June 7, 2017
Mifflin Township Zoning Hearing    :
Board                                  :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: July 3, 2017**

Marr Development Mifflinville, LLC (Applicant) appeals from an Order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (common pleas), which affirmed a decision of the Mifflin Township Zoning Hearing Board (Board) to deny Applicant's request for a special exception to construct 11 single-family attached dwellings, or duplexes. The Board denied the application on the grounds the proposed duplexes were not compatible with or in the best interest of the surrounding area. Finding the Board's decision was not supported by substantial evidence, we reverse.

Applicant owns a 5.85 acre parcel of land located at 611 Race Street, Mifflinville, Mifflin Township, Columbia County, Pennsylvania. The property is

located in the Suburban Residential District (RS District).  According to the Mifflin Township Zoning Ordinance (Ordinance), the purpose of the RS District is "to promote and encourage a suitable and safe environment for family life by providing only for single family residences and residential support land uses." (Ordinance, § 431.)  Under the Ordinance, single-family **detached** dwellings[1] are permitted uses in the RS District.  (Ordinance, § 432.A.3.)  Single-family **attached** dwellings[2] **limited to two dwelling units** are permitted in the RS District by special exception.  (Ordinance, § 423.C.3.)

On July 21, 2014, Applicant filed an application with the Board seeking a special exception to construct 11 duplexes.  Applicant planned to subdivide the 5.85-acre parcel into 12 lots, ranging in size from 0.28 acres to 0.53 acres.  One of the 12 lots would contain an existing single-family detached dwelling.  A duplex would be constructed on each of the remaining 11 lots.  Plans also called for a storm water retention basin, and access to the duplexes would be provided from a cul-de-sac off a state route.

On September 16, 2014, the Board held a hearing on the application.  The zoning officer and Applicant's vice president/controller provided testimony concerning the proposed project.  In addition, several residents opposed to the project (objectors) testified about their concerns, which included stormwater management, flooding, traffic, and the effect on neighborhood aesthetics.

---

[1] Single-family **detached** dwelling is defined as a "dwelling having only one dwelling unit from ground to roof, independent outside access and open space on all sides."  (Ordinance, § 232.A.)

[2] Single-family **attached** dwelling is defined as a "dwelling containing only one dwelling unit from ground to roof, independent outside access and a portion of one or two walls in common with adjoining dwellings."  (Ordinance, § 232.B.)

2

Following the hearing, the Board voted to deny the special exception application, concluding Applicant did not satisfy its burden of proving the proposed use was in the best interest of the properties in the general area and community at large. Applicant appealed to common pleas, which remanded the matter after finding the Board improperly placed the burden of establishing general compatibility with the surrounding area on the Applicant rather than the objectors.

On remand, the Board did not take additional evidence. Based on the testimony from the original hearing, the Board determined that the objectors met their burden of proof with respect to compatibility. The Board concluded that the proposed use was "more intense" than surrounding land use. (Board Decision, May 6, 2015, at 2.) It noted that the proposed project would create 11 duplexes or 22 units in an area where only 17 single-family dwellings already exist, thereby doubling the number of dwelling units in the area. As a result, the Board found "the proposed use presents a project which is not consistent or compatible with the existing and adjoining land uses that were and have been developed for single family residential structures and not duplex units." (*Id.*)

Applicant again appealed the Board's decision to common pleas. Common pleas did not take additional evidence. Based upon the record developed before the Board, common pleas issued an order denying Applicant's appeal. In an opinion filed in support of its order, common pleas concluded that the Board's decision was supported by substantial evidence and, therefore, the Board did not abuse its discretion or commit an error of law in denying the special exception application. This appeal followed.

On appeal,[3] Applicant maintains the Board erred in concluding the objectors met their burden of showing the proposed duplexes were incompatible with the surrounding area. Based upon our review of the record, we agree.

As a preliminary matter, despite its name, a special exception is not an exception to a zoning ordinance; rather, it is a use that is expressly permitted by the ordinance unless the board determines, according to standards set forth in the ordinance, that the proposed use would adversely affect the community. *E. Manchester Twp. Zoning Hearing Bd. v. Dallmeyer*, 609 A.2d 604, 610 (Pa. Cmwlth. 1992). Because the use is contemplated by the ordinance, there is a **presumption that the governing body considered the effect of the use when enacting the ordinance and determined that the use is consistent with the health, safety, and welfare of the community so long as it meets the objective requirements of the ordinance**. *Id.* Provided it does, the burden then shifts to the objectors to rebut this presumption by presenting evidence that, either the proposed use would have a detrimental effect on the public health, safety, and welfare of the community or that it would conflict with the expressions of general policy contained in the ordinance. *Id.*

It is important to appreciate that the burden placed on the objectors is a heavy one. "They cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that the proposed use will substantially affect the health and safety of the community." *Id*; *Manor*

---

[3] In a land use appeal where common pleas does not take additional evidence, such as here, our review is limited to determining whether the Board abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). The Board abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

4

*Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 71 (Pa. Cmwlth. 1991).

Here, it is not disputed that Applicant meets the objective requirements for a special exception, thereby satisfying its burden. What is at issue is whether the objectors have "raise[d] specific issues concerning the proposal's general detrimental effect on the community," as to satisfy their heavy burden. *Manor Healthcare*, 590 A.2d at 71. The Board and common pleas concluded the proposed use was incompatible with the surrounding area. Section 1113.B.2 of the Ordinance speaks of compatibility, as follows:

> Compatibility – the proposed use shall be in the best interest of properties in the general area as well as the community at large. The proposed use will be reviewed as to its relationship to and effect on surrounding land uses and existing environmental conditions regarding the pollution of air, land and water; noise; potential of hazards and congestion; illumination and glare; restrictions to natural light and circulation of air.

(Ordinance, § 1113.B.2.) The Board focused on the first part of the compatibility provision – whether the proposed use is in the best interest of properties in the general area and community at large – and reviewed the application as to its relationship to and effect on surrounding land uses. (Board Decision, May 6, 2015, at 2.) Because the plans call for one duplex with two units and two families on each lot, the Board determined "the intensity and proposed scope of the proposed use is more intense than the existing surrounding land use patterns that are utilized for single family residential structures." (*Id.*)

Contrary to the Board's determination, the proposed duplexes are, in fact, consistent with the stated purpose of the Ordinance. Section 431 of the Ordinance states that the purpose of the RS District is "to promote and encourage a suitable and safe environment for family life by providing only for **single family**

5

**residences** and residential support land uses." (Ordinance, § 431) (emphasis added). The Board interpreted this purpose as applying only to single-family **detached** dwellings, without consideration that single-family **attached** dwellings, such as the proposed duplexes, are also expressly provided by the Ordinance and considered **single family** in nature. Thus, to the extent the Board found the proposed use conflicts with the policy behind the Ordinance, this conclusion was in error.

In addition, the record does not contain substantial evidence to support the Board's decision. The objectors simply did not present competent, objective evidence sufficient to carry their heavy burden of rebutting the presumption by demonstrating the proposed use is inconsistent with the health, safety, and welfare of the community. As stated above, objectors cannot merely speculate as to possible harm; they must show "a high degree of probability that [the proposed use] will [substantially] affect the health and safety of the community." *Manor Healthcare*, 590 A.2d at 71. Here, the fears that objectors expressed about stormwater management, flooding, and increased traffic were speculative, at best, and inadequate to constitute substantial evidence. Furthermore, the objectors did not present evidence that the proposed use would generate adverse **effects greater than that normally expected** from this type of use. *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.*, 739 A.2d 644, 651 (Pa. Cmwlth. 1999). Obviously, an increase in the number of dwellings is going to have a corresponding increase in the amount of traffic. However, "an increase in traffic is generally not grounds for denial of a special exception unless there is a high probability that the proposed use will generate traffic **not normally generated by that type of use and that the abnormal traffic threatens safety**." *Accelerated*

6

*Enters., Inc. v. The Hazle Twp. Zoning Hearing Bd.*, 773 A.2d 824, 827 (Pa. Cmwlth. 2001) (emphasis added). Here, there was no traffic study presented; rather, objectors simply testified as to their opinion that traffic would increase. Yet, it bears emphasis that the duplexes would be accessed from a cul-de-sac off a state route, not a township roadway. Simply put, there is no substantial evidence to support the Board's conclusion.

The Board also claimed the project would double the number of existing units in a one-block area and, therefore, is "more intense." (Board Decision, May 6, 2015, at 2.) This conclusion improperly concentrates solely on the impact on the immediate one-block area,[4] without regard for the "community at large" or any of the other factors expressed in Section 1113.B.2 of the Ordinance. It also does not address that across the street from the proposed project are an operating mill, a fire hall, a cemetery, and a 20-unit apartment complex. Moreover, the Board's contention that the proposed use is "more intense" is undercut by the fact that the 12 proposed lots all meet the setback and lot dimension requirements. In *Zajac v. Zoning Hearing Board of Mifflin Township*, 398 A.2d 244 (Pa. Cmwlth. 1979), a case involving the same Board, we reversed its denial of a special exception for a mobile home court. Like here, we said the force of the Board's and objectors' density concerns was "weakened" by the fact that the application complied with the Ordinance's requirements. *Id.* at 247.

The Ordinance is silent as to density. Similarly, the Ordinance places no limit on the number of duplexes permitted.[5] Yet, the Board is attempting to write

---

[4] It cannot go unnoticed that the "block" at issue exceeds six acres, as Applicant's property alone is that size, and there are a number of other lots located within the block.

[5] Because the development proposal calls for construction of 11 duplexes, the dissent maintains this case is unique and atypical and, therefore, special rules should apply, even though **(Footnote continued on next page…)**

7

in a density provision to bar this project from moving forward.[6]  While the Board claims the proposed use is inconsistent with the character of the neighborhood, duplexes, a form of **single-family** residences, are permitted by special exception in the RS District.  "[T]here is a 'presumption' that the use is a 'conditionally permitted use, legislatively allowed if the [objective] standards are met." *JoJo Oil Co., Inc. v. Dingman Twp. Zoning Hearing Bd.*, 77 A.3d 679, 686 (Pa. Cmwlth. 2013) (quoting *Bray v. Zoning Bd. of Adjustment of City of Phila.*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980)).  The objectors failed to present sufficient evidence to rebut this presumption.  Because common pleas erred in finding that the Board's decision was supported by substantial evidence, we reverse.

_____

**RENÉE COHN JUBELIRER,** Judge

_____

**(continued…)**

the Ordinance contains no such limitation.  However, if the subject property was comprised of 12 smaller lots, each separately owned, and the property owners individually sought a special exception to construct a duplex on their respective lots, would the number of duplexes support the Board in denying some, but not all, of the applications?

[6] The dissent similarly attempts to include a density requirement where none exists.  The analysis is not altered by the fact that the Applicant here seeks to subdivide one large parcel of property into smaller lots, which otherwise conform to all setback and lot dimension requirements, to develop one duplex on each of those lots.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marr Development Mifflinville, LLC,   :
                  Appellant   :
                        :
           v.           :   No. 2681 C.D. 2015
                        :
Mifflin Township Zoning Hearing   :
Board                        :

## O R D E R

**NOW**, July 3, 2017, the Order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch), dated December 11, 2015, is **REVERSED.**

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marr Development Mifflinville, LLC,      :
     : No. 2681 C.D. 2015
             Appellant      : Argued: June 7, 2017
     :
           v.      :
     :
Mifflin Township Zoning Hearing Board      :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                        FILED: July 3, 2017


I respectfully dissent.

This is not a typical special exception case. What makes this case unique is that Marr Development Mifflinville, LLC (Applicant) filed a single application requesting not one, but 11 special exceptions to build 11 two-family attached dwelling units or duplexes in a district that is zoned for "[s]ingle family *detached* dwellings" under the Mifflin Township Zoning Ordinance (Ordinance).[1] Section 432.A.3 of the Ordinance (emphasis added). Although the Ordinance permits "single family attached dwellings, limited to two dwelling units" by special exception under Section 432.C.3 of the Ordinance, the intensity of the proposed use conflicts with the compatibility requirements of the Ordinance.

---

[1] The Ordinance was enacted January 18, 1973.

It is an objector's burden to show that the proposed use will substantially affect the health, safety and welfare of the community "*or will conflict with the expressions of general policy contained in the ordinance*." *JoJo Oil Co., Inc. v. Dingman Township Zoning Hearing Board*, 77 A.3d 679, 688 (Pa. Cmwlth. 2013) (citing *Bray v. Zoning Board of Adjustment of City of Philadelphia*, 410 A.2d 909, 913 (Pa. Cmwlth. 1980)) (objectors have both the duty and burden regarding "general policy concern, *e.g.*, as to harmony with the spirit, intent or purpose of the ordinance")) (emphasis added). "[T]he impact of a use on the character of the neighborhood is a relevant area of inquiry in a special exception case . . . ." Robert S. Ryan, PENNSYLVANIA ZONING LAWS AND PRACTICE, at §5.3.4 (2012 ed.).

> Accordingly, if a zoning ordinance is drawn rationally, a decision to permit a use by special exception reflects at the least a legislative judgment that the *degree of impact which necessarily flows from the use does not materially affect the public interest*, and will not justify a denial of the use. The most common error of protestants and of the zoning boards in special exception cases is the failure to recognize that the existence of the special exception itself represents a legislative determination *that the degree of impact* is permissible.'

*Board of Supervisors of Lower Providence Township v. Ford*, 283 A.2d 731, 733 (Pa. Cmwlth. 1971) (quoting Ryan, PENNSYLVANIA ZONING, §5.2.6 (1970 ed.)) (emphasis added). To justify the denial of a special exception, the impact from the proposed use must be greater than the impact that normally results from such use. *Id*. (citing *Archbishop O'Hara's Appeal*, 131 A.2d 587 (Pa. 1957)).

The Ordinance is designed to "promote proper density of population." Section 121 of the Ordinance. The Ordinance allows for "[s]ingle family detached dwelling" as a permitted principal use in the Suburban Residential District (RS

District).  Section 432.A.3 of the Ordinance.  It also allows for a "[s]ingle family attached dwelling, limited to two dwelling units" as a use permitted by special exception.  Section 432.C.3 of the Ordinance.  However, duplexes and multi-duplex developments, such as the one proposed here, are permitted principal uses in higher density districts, such as the Urban Residential Districts and Neighborhood Commercial Districts.  Sections 442.A.2 and 452.A.2 of the Ordinance.

In addition, the framers of the Ordinance determined that a special exception must be compatible, meaning "in the best interest of properties in the general area as well as the community at large."  Section 1113.B.2 of the Ordinance.  "The proposed use will be reviewed as to its relationship to and effect on surrounding land uses . . . ." *Id.*

Here, the Board found that the objectors met their burden of proving the proposed use will conflict with expressions of general policy in the Ordinance because it is incompatible with the surrounding area and community at large.  More particularly, the proposed multi-duplex use is not consistent or compatible with the existing and adjoining land uses or the development goals of the RS District.  The proposed use is "more intense" than the surrounding area.  Board Opinion, at 2.

Indeed, it is the scope of the application and the number of duplexes proposed in this single application that are of concern here.  Applicant did not request a special exception to erect one "single family attached dwelling, limited to two dwelling units."  Rather, Applicant requested permission to erect 11 duplexes on one lot, for a total of 22 new dwelling units.  The block on which the Property is located contains 17 single-family detached dwelling units.  N.T. at 86.  The

proposed 22-unit complex would more than double the number of dwelling units in just that block and outnumber the 17 single-family detached dwelling units. N.T. at 86. Such an increase in the number of duplexes will significantly alter the character and composition of the surrounding neighborhood from predominantly single detached dwelling units to predominantly duplexes. *See Blair v. Board of Adjustment of Borough of Hatboro*, 169 A.2d 49, 50-51 (Pa. 1961) (holding the "accumulation of five [gasoline] service stations within a radius of 350 feet has a definite effect on the 'character' of the immediate neighborhood, . . . zoned primarily for retail business."). Such an immediate alteration in the composition of the community is not in the best interest of the properties in the general area or the community at large.

It is the degree of impact that is at odds with the Ordinance, not the use itself. The proposed scope of the project runs counter to what the drafters contemplated for the RS District and far exceeds the expected impacts normally contemplated for a single-family attached dwelling, limited to two units. *See Ford*, 283 A.2d at 733. Applicant's request is akin to using a special exception permitting a single retail store use to justify the construction of a multi-store strip mall. Thus, I believe the Board did not err in determining that objectors met their burden of proving that a multi-duplex development is not consistent with the RS District's development objectives for single-family *detached* dwelling units or in the best interests of the surrounding community. For these reasons, I would affirm.

_____
MICHAEL H. WOJCIK, Judge

MHW - 4