Protect Elizabeth Township, Joelle    :
Whiteman, Erik Katchur, Sandy      :
Steffan, Sandra Hearn, and Ted Grice,  :
                   Appellants     :
                               :
                v.            :    No. 830 C.D. 2024
                               :    Argued: May 6, 2025
Elizabeth Township, Elizabeth      :
Township Board of Commissioners,  :
Hyperion Midstream LLC, and     :
Olympus Energy LLC          :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: June 13, 2025

Protect Elizabeth Township, Joelle Whiteman, Erik Katchur, Sandy Steffan, Sandra Hearn, and Ted Grice (collectively, Appellants), appeal the June 4, 2024 Order of the Court of Common Pleas of Allegheny County (trial court), which affirmed the January 9, 2023 decision of the Elizabeth Township Board of Commissioners (Board). In the January 2023 decision, the Board granted Olympus Energy LLC's (Olympus) and Hyperion Midstream LLC's (Hyperion) (together, Companies) applications for conditional use under Chapter 27 of the Code of the Township of Elizabeth (Zoning Ordinance),[1] regarding the development and

---

[1] ELIZABETH TWP., ALLEGHENY CNTY., PA., ZONING ORDINANCE §§ 100-2201 (2023).

operation of an unconventional natural gas well pad, natural gas pipeline, gravel access road, and interconnect pad in an R-1, rural residential district within Elizabeth Township (Township). Upon review, we reverse the trial court's Order because the Board erred in approving Companies' conditional use applications as the Zoning Ordinance prohibits additional principal structures on the lots where the proposed conditional uses will be located.

## I.    BACKGROUND

On May 3, 2022, Olympus filed a conditional use application with the Township seeking to develop and operate an unconventional natural gas well pad (Well Pad) on an approximately 187-acre lot owned by Ronald and Margarete Lombardo, Allan Lombardo, and Cheryl Lombardo and located in an R-1, rural residential district within the Township. The Lombardos' lot contains a single-family dwelling. On the same day, Hyperion, a wholly-owned subsidiary of Olympus, filed a conditional use application with the Township seeking to construct a natural gas pipeline, a gravel access road, and an interconnect pad (Interconnect Pad) adjacent to and in connection with the Well Pad on two adjacent lots, approximately 63 and 32 acres in size, owned by Richard Everly. Companies proposed locating the Interconnect Pad and natural gas pipeline on the larger of Mr. Everly's two lots, which contains a single-family dwelling. The proposed access road traverses both of Mr. Everly's two lots and the Lombardos' lot.

From September to November 2022, the Board held a series of public hearings regarding Companies' applications, at which Companies and Appellants presented witnesses and entered exhibits into evidence. On January 9, 2023, the Board granted Companies' applications, concluding Companies established a prima facie case for a conditional use and Appellants did not satisfy their burden to show that the

2

proposed Well Pad and Interconnect Pad (together, Pads) will have a detrimental effect on public health, safety, and welfare. The Board explained that because Township ordinances authorize oil and gas drilling and operations as conditional uses within R-1, rural residential districts, "the Township has already decided that development of the proposed [Pads] is consistent with the general public health, welfare, and safety of that zone." (Board's Conclusion of Law ¶ 7.) Because the Board concluded that Companies met their burden to demonstrate compliance with the "specific objective express standards" set forth in the Zoning Ordinance and the Township's Oil and Gas Ordinance,[2] the Board explained that "the presumption that the use is consistent with the health, safety, and welfare of the community applies" and Companies "were not required to present evidence with respect to the same." (*Id.*) Consequently, "the burden then shifted to [Appellants] to present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare." (*Id.* ¶ 8.) Although "sympathetic to the understandable concerns" of Appellants, the Board concluded that Appellants did not meet their burden because they merely "express[ed] vague 'concerns' about alleged impacts of [Companies'] proposed development" and "present[ed] evidence of alleged adverse impacts from oil and gas development generally." (*Id.* ¶ 13.) Therefore, the Board granted Companies' applications, subject to delineated conditions.

Appellants appealed the Board's decision to the trial court, which, without taking additional evidence, affirmed the Board's decision because Companies produced substantial evidence that the proposed Pads are authorized conditional uses in an R-1, rural residential district under the Oil and Gas Ordinance. The trial court reasoned the Board properly concluded the Pads are authorized conditional uses

---

[2] ELIZABETH TWP., ALLEGHENY CNTY., PA., ORDINANCE NO. 942 (March 4, 2019).

3

under the Oil and Gas Ordinance because the Well Pad is undisputedly authorized, and Companies established that the Interconnect Pad "is an integral part of any oil and gas operation." (Trial Court's Opinion at 4.) The trial court further agreed with the Board that Companies satisfied their burden regarding the "specific objective express standards," the Zoning Ordinance did not prohibit multiple principal uses on a single lot, and Companies did not need to demonstrate compliance with the performance standards enumerated in the Zoning Ordinance. (*Id.* at 4-6.) Finally, the trial court determined that the Board properly "concluded that [Appellants] failed to establish that development of the proposed facilities would result in adverse health, welfare and safety impacts beyond those normally associated with the development of a typical unconventional natural gas well pad or interconnect site." (*Id.* at 6.) Therefore, the trial court concluded that the Board correctly granted Companies' applications because they established a prima facie conditional use case and Appellants did not meet their burden to prove otherwise.

Appellants now appeal the trial court's Order to this Court.

## II. DISCUSSION[3]

### A. General Interpretation Principles

To start, "[w]here a zoning hearing board's interpretation of its ordinance is at issue, we must 'begin[] with examination of the text itself.'" *Plum Borough v.*

---

[3] "Where the trial court does not take additional evidence," as in the instant case, "appellate review of the decision of a zoning hearing board is limited to determining whether the board abused its discretion or erred as a matter of law." *RDM Grp. v. Pittston Twp. Zoning Hearing Bd.*, 311 A.3d 1216, 1223-24 (Pa. Cmwlth. 2024) (citation omitted), *petition for allowance of appeal denied*, (Pa., No. 218 MAL 2024, filed Sept. 18, 2024). The Court may conclude the zoning hearing board abused its discretion "where its findings are not supported by substantial evidence, which is such relevant evidence that a reasonable mind would accept as adequate to support the conclusions reached." *Id.* at 1224. However, "[w]e may not substitute our interpretation of the
**(Footnote continued on next page…)**

4

*Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (citation omitted). Generally, "a zoning board's interpretation of its zoning ordinance is to be given great weight as representing the construction of a statute by the agency charged with its execution and application." *Id.* (citation omitted). "However, we will not defer to a zoning hearing board's interpretation where such interpretation is 'clearly erroneous,' and generally, a board's failure to heed the plain text of the ordinance amounts to legal error which this Court will not ignore." *Id.*

Further, "[w]hile the Statutory Construction Act [of 1972[4]] does not specifically apply to our construction of zoning ordinances, we have nonetheless applied these principles in our interpretative decisions." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899 (Pa. 2019). Thus, when two provisions in the same zoning ordinance conflict, "the later in order of date or position prevails." *Heck v. Zoning Hearing Bd. of Harvey's Lake Borough*, 397 A.2d 15, 17 (Pa. Cmwlth. 1979) (citing Section 1934 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1934). "In addition, in resolving a conflict between provisions in a zoning ordinance, the more specific provisions control over the more general ones." *Latimore Township v. Latimore Twp. Zoning Hearing Bd.*, 58 A.3d 883, 887 (Pa. Cmwlth. 2013). Moreover, "[a] zoning ordinance should be construed

---

evidence for that of the zoning hearing board, which has expertise in, and knowledge of, local conditions." *Id.* Moreover, "[i]t is the function of a zoning hearing board to weigh the evidence before it," and it "is the sole judge of the credibility of witnesses and the weight afforded their testimony." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). Accordingly, the "zoning board is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness." *Id.* Further, "[a]ssuming the record contains substantial evidence, we are bound by the board's findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence." *Id.* Finally, "[w]e must view the evidence in a light most favorable to the party that prevailed before the zoning hearing board and afford that party all inferences reasonably drawn from the evidence." *RDM Grp.*, 311 A.3d at 1224.

[4] 1 Pa.C.S. §§ 1501-1991.

so that none of its language is superfluous." *Id.*; *see also Anter Assocs. v. Zoning Hearing Bd. of Concord Twp.*, 17 A.3d 467, 469 (Pa. Cmwlth. 2011) ("[W]e must attempt to construe a zoning ordinance to give effect to all its provisions."). Finally, we may add words and phrases in construing the zoning ordinance that are "necessary to the proper interpretation" of the ordinance and "do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation." Section 1923 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1923.

### B. *Conditional Use Applications*

#### 1. Legal Standard

Section 603(c)(2) of the Pennsylvania Municipalities Planning Code (MPC)[5] provides that "[z]oning ordinances may contain: . . . (2) provisions for conditional uses to be allowed or denied by the governing body after recommendations by the planning agency and hearing, pursuant to express standards and criteria set forth in the zoning ordinance." 53 P.S. § 10603(c)(2). "A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). "As in the case of special exceptions, the uses which may be established or maintained as conditional uses are prescribed by the zoning ordinance and the standards to be applied to the granting or denial thereof are set forth in the zoning ordinance." *Id.* A conditional use "is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance for the [conditional use] are met by the applicant." *Id.* Because the applicant is entitled to a conditional use, subject to enumerated standards, "there is a presumption that the governing body considered

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10101-11202.

6

the effect of the use when enacting the ordinance and determined that the use is consistent with the health, safety, and welfare of the community so long as it meets the objective requirements of the ordinance." *Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017) (emphasis removed).

"An applicant for conditional use has the burden to demonstrate compliance with the specific criteria of the ordinance."[6] *In re Thompson*, 896 A.2d at 670. "Once the applicant meets the requirements, he has made out his prima facie case and the application must be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare." *Id.* Following this shift, "the burden placed on the objectors is a heavy one." *Marr*, 166 A.3d at 483. The objectors "cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that the proposed use will substantially affect the health and safety of the community." *Id.* (quoting *E. Manchester Twp. Zoning Hearing Bd. v. Dallmeyer*, 609 A.2d 604, 610 (Pa. Cmwlth. 1992)). Moreover, the objectors must show "that the proposed use would create an adverse impact not normally generated by the type of use proposed." *In re Thompson*, 896 A.2d at 679.

## 2. Analysis

Appellants first argue that the Board erred because its approval of the Pads as conditional uses on lots with existing single-family dwellings violated Section 303(C) of the Zoning Ordinance, which mandates that, if present, the single-family

---

[6] "Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both." *In re Thompson*, 896 A.2d at 670 (citing *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113, 115 n.5 (Pa. Cmwlth. 2002)).

7

dwelling be the sole "principal structure" on the lot. (Appellants' Brief (Br.) at 12.) Appellants maintain that the Pads are "principal structures," and thus prohibited by Section 303(C), because they contain "structures," as defined by Section 201 of the Zoning Ordinance, "in which the principal use is conducted." (*Id.* at 12, 14.) Appellants contend that the Pads are a "principal use" of the lots because they are "[t]he primary or predominant use to which the property is or may be devoted" and are not an "accessory use" to any other principal use, such as the single-family dwellings. (*Id.* at 15-16.) Accordingly, Appellants argue that Companies did not demonstrate compliance with the specific requirements of the Zoning Ordinance because the attempt to add additional principal structures to the lots violated Section 303(C) of the Zoning Ordinance.

In opposition, Companies argue the Pads are permitted on the chosen lots, despite the existing single-family dwellings, because the Pads are not principal structures under the Zoning Ordinance and, thus, Section 303(C) does not apply.[7] Companies maintain that the Pads are not principal structures because a "principal structure" is a "'roofed structure' synonymous to a 'completely enclosed building,'" and the Pads do not contain enclosed buildings. (Companies' Br. at 15.) Companies reach this interpretation based on the definition of "principal building or structure" in the Zoning Ordinance. (*Id.*) Companies argue that because the conjunction "or" is not placed between "building" and "structure" in the definition of "principal building or structure," and "a building is a type of structure, the term 'building' in 'building structure' must be read as a descriptor or it is otherwise redundant." (*Id.*) Consequently, in their view, a "principal structure" must be a "principal building"

---

[7] Appellees the Township and the Board, pursuant to Pennsylvania Rule of Appellate Procedure 2137, Pa.R.A.P. 2137, joined and adopted by reference the arguments set forth in Companies' appellate brief in lieu of filing a separate brief.

as defined by the Zoning Ordinance, which the Pads are not. (*Id.*) Thus, Companies argue that the Board did not err in granting their conditional use applications.

Section 303(C) of the Zoning Ordinance mandates that "[i]n all zoning districts where single-family dwellings or two-family dwellings are an authorized use or are a legally nonconforming use, the single-family dwelling or two-family dwelling shall be the only principal structure on the lot." ELIZABETH TWP., ALLEGHENY CNTY., PA., ZONING ORDINANCE § 303(C) (2023). The Zoning Ordinance defines "principal building or structure" as "[t]he building structure in which the principal use is conducted." *Id.* § 201. In turn, "building" is defined as "[a] roofed structure, enclosed by walls to be used for shelter, enclosure or protection of persons, goods, materials and animals," and "structure" is defined as "[a]ny man-made object having an ascertainable stationary location on or in land or water whether or not affixed to the land." *Id.* Additionally, "principal use" is defined as "[t]he primary or predominant use to which the property is or may be devoted, and to which all other uses on the premises are accessory." *Id.* Finally, "accessory use or structure" is defined as "[a] use or structure, located on the same lot with the principal use or structure, that is subordinate and incidental to the principal structure or use of the property and that may occupy a separate structure and/or area on or in the ground . . . ." *Id.*

Here, in reaching its decision to grant the applications, the Board concluded that Section 303(C) did not apply because "this restriction specifically applies to principal structures, not uses." (Board's Decision at 47.) The Board reasoned that to qualify as a "principal structure," the Pads must be a "building structure." (*Id.*) And, because the Pads are not "buildings," i.e., "a roofed structure, enclosed by walls to be used for shelter, enclosure or protection of persons, goods, materials, and

9

animals," the Board concluded that the structures are not "building structures" and, thus, not "principal structures." (*Id.*) The trial court affirmed the Board's interpretation, reasoning that the Board's approval of the Pads "did not run afoul of a requirement that a single-family dwelling must be the only 'principal structure' on the lot" because "Section 303 of the Zoning Ordinance does not prohibit more than one principal use on the lot." (Trial Court's Opinion at 5.)

Such an interpretation, however, would render the term "principal structure" superfluous, and "[a] zoning ordinance should be construed so that **none** of its language is superfluous." *Latimore Township*, 58 A.3d at 887 (emphasis added); *see also Anter Assocs.*, 17 A.3d at 469 ("[W]e must attempt to construe a zoning ordinance to give effect to all its provisions."). Accordingly, to give effect to the term "principal structure," the definition of "principal building **or** structure" must be construed as "[t]he building [**or**] structure in which the principal use is conducted." *See* ELIZABETH TWP., ALLEGHENY CNTY., PA., ZONING ORDINANCE § 201 (emphasis added). Otherwise, the term "principal structure" would merely mean "principal building," and the deliberate use of both terms throughout the Zoning Ordinance would lose its distinction. *See, e.g.*, *id.* § 1504 (referring to both "principal structure" and "principal building"). Therefore, the Court may add the conjunction "or" to the definition of "principal building or structure" because it is necessary to the proper interpretation of the Zoning Ordinance and does not conflict with the purpose and intent or affect the scope and operation of the Zoning Ordinance. *See* Section 1923(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1923(c).

Next, we turn to whether the Pads are "principal structures" as used in Section 303(C) of the Zoning Ordinance. The Zoning Ordinance, as interpreted above, defines "principal structure" as the "structure in which the principal use is

10

conducted." *See* ELIZABETH TWP., ALLEGHENY CNTY., PA., ZONING ORDINANCE § 201. The Zoning Ordinance further defines "structure" as "[a]ny man-made object having an ascertainable stationary location on or in land or water whether or not affixed to the land" and "principal use" as "[t]he primary or predominant use to which the property is or may be devoted, and to which all other uses on the premises are accessory." *Id.*

Here, the Pads are "principal structures" because they are "structures" in which a "principal use is conducted." *See id.* First, the Pads are "structures" because they are man-made objects with ascertainable stationary locations on land. *See id.* Second, the Pads are "principal uses" because they are a "primary and predominant use" of the lots. *See id.*; *see also id.* § 601(B)(1)(i) (listing "oil and gas drilling" as "principal uses"). Indeed, the parties do not dispute that the Pads are principal uses of the chosen lots. (*See* Appellants' Br. at 15-16; Companies' Br. at 7.) Therefore, the Pads are "principal structures" and, consequently, are prohibited from being located on the chosen lots pursuant to Section 303(C) of the Zoning Ordinance because each lot on which Companies propose to locate the Pads contains an existing single-family dwelling. *See* ELIZABETH TWP., ALLEGHENY CNTY., PA., ZONING ORDINANCE § 303(C).

Companies assert that even if the Pads are considered principal structures under the Zoning Ordinance, the Pads are permitted despite the existing single-family dwellings because the Oil and Gas Ordinance prevails over the Zoning Ordinance. Companies reason that the Oil and Gas Ordinance explicitly permits the proposed Pads as conditional uses within the R-1, rural residential district, and "[t]here is nothing in the Oil and Gas Ordinance stating that other previously adopted provisions in the Zoning Ordinance would apply to the uses addressed in the Oil and

11

Gas Ordinance." (Companies' Br. at 17.) Accordingly, because "[t]he Oil and Gas Ordinance contains more specific provisions, and was adopted in 2019, well after the Zoning Ordinance," Companies maintain that "[t]o the extent there is any conflict between their terms, the Oil and Gas Ordinance prevails over the Zoning Ordinance." (*Id.*)

Because the Oil and Gas Ordinance and the Zoning Ordinance both relate to zoning within the Township, we must construe the ordinances *in pari materia*. *See* Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932. Further, Companies are correct that when two provisions in the same zoning ordinance conflict, "the later in order of date or position prevails," *Heck*, 397 A.2d at 17, and "the more specific provisions control over the more general ones," *Latimore Township*, 58 A.3d at 887. However, the Oil and Gas Ordinance and the Zoning Ordinance do not conflict on this issue. Both ordinances permit oil and gas conditional uses in the Township's R-1, rural residential districts and contain requirements that applicants must meet to obtain such conditional uses. Although nothing in the Oil and Gas Ordinance prohibits multiple principal structures or uses on a single lot, the Oil and Gas Ordinance also does not provide that Section 303(C) of the Zoning Ordinance is inapplicable to oil and gas conditional uses. Therefore, reading the two ordinances *in pari materia*, Section 303(C) of the Zoning Ordinance is applicable to oil and gas conditional uses because it does not conflict with the Oil and Gas Ordinance.

Accordingly, the Board erred as a matter of law in granting Companies' conditional use applications because Section 303(C) of the Zoning Ordinance

prohibits the Pads, as principal structures, from being located on the proposed lots as the lots contain existing single-family dwellings.[8]

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's Order because the Board erred in approving Companies' conditional use applications as Companies did not demonstrate compliance with Section 303(C) of the Zoning Ordinance.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[8] Because we conclude that the Board erred in granting Companies' conditional use applications as it violated Section 303(C) of the Zoning Ordinance, we do not reach the remainder of Appellants' arguments.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Protect Elizabeth Township, Joelle    :
Whiteman, Erik Katchur, Sandy    :
Steffan, Sandra Hearn, and Ted Grice,    :
                Appellants    :
    :
          v.    :  No. 830 C.D. 2024
    :
Elizabeth Township, Elizabeth    :
Township Board of Commissioners,    :
Hyperion Midstream LLC, and    :
Olympus Energy LLC    :

## O R D E R

    **NOW**, June 13, 2025, the June 4, 2024 Order of the Court of Common Pleas of Allegheny County is **REVERSED**.

 

_____
**RENÉE COHN JUBELIRER,** President Judge