IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PA 180 Kost Road LLC,           :
                    Appellant   :
                                :
        v.                      : No. 1705 C.D. 2024
                                : Submitted: March 3, 2026
Silver Spring Township Zoning   :
Hearing Board and Silver Spring :
Township                        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                           FILED:  June 29, 2026


        PA 180 Kost Road LLC (Applicant) appeals from the November 14, 2024 order of the Court of Common Pleas of Cumberland County (Common Pleas), which affirmed the decision of the Silver Spring Township (Township) Zoning Hearing Board (Board) to deny Applicant's request for a special exception for the alteration of a nonconforming use.  Upon review, we affirm.

## BACKGROUND

        Applicant currently owns approximately 78 acres located at 180 Kost Road in the Township (Property).  The Property features an industrial warehouse and an administration building.

Previously, the International Business Machines Corporation (IBM) owned the Property, and at the time of its acquisition in 1979, the Property was located in a zoning district permitting warehousing and distribution. With the Township's approval, IBM constructed three connected buildings on the Property to operate a materials distribution center. Subsequently, for purposes of financing and without obtaining the Township's approval, IBM subdivided the Property into three separate tax parcels, each housing one of the three buildings: Parcel A, containing an 82,376-square-foot administration building (Lot A); Parcel B, containing a 254,016-square-foot warehouse building (Lot B); and Parcel C, containing a 74,000-square-foot high-rack storage area (Lot C).

In 2015, the Township amended its zoning ordinance (Ordinance),[1] rezoning the Property as light industrial (I-1 District), which does not permit warehouses. ORDINANCE, § 214(B). As a result of the zoning amendment, the warehousing and distribution use on the Property became nonconforming.[2]

In 2017, Applicant acquired the Property. At that time, the administration building on Lot A was used, in part, as a conduit for utilities for the warehouse. Reproduced Record (R.R.) at 44a, 55a-56a, 58a; Notes of Testimony (N.T.), Hearing, 1/8/24, at 44-45, 90-92, 102-04.

In 2018, the Board approved Applicant's request for a special exception to demolish the buildings on Lots B and C, together totaling 325,450 square feet, and replace them with a single 478,080-square-foot warehouse. The new warehouse

---

[1] Silver Spring Township Zoning Ordinance of 2022, *as amended*. A complete copy of the Ordinance can be found at https://ecode360.com/15709147#15709147 (last visited June 26, 2026).

[2] Section 600 of the Ordinance provides "any use, building, or structure lawfully existing at the time of enactment of this chapter may be continued, although it is not in conformity with the regulations specified by this chapter." ORDINANCE, § 600.

2

represented a 49.7 percent expansion of the building area.[3]  R.R. at 110a-11a.  The administration building thereafter ceased to provide any utilities to the new warehouse, but remained otherwise unchanged.

In 2021, Applicant effectuated a reverse subdivision, consolidating the three lots into a single lot under a plan approved by the Township.

In November 2023, Applicant applied for a special exception under Section 603A of the Ordinance, relating to extension or alteration of nonconforming use.[4]  It provides in relevant part:

> A. Any non-conforming use may be expanded or altered through the obtainment of a special exception and subject to the following criteria, and those contained in § 415-704C:
>
> > (1) Expansion of the non-conformity shall be confined to the lot on which it was located on the effective date of this chapter, or any amendment thereto creating the nonconformity;
> >
> > (2) *The total of all such expansions or alterations of use shall not exceed an additional 50% of the area of those buildings or structures or land devoted to the nonconforming use, as they existed on the date on which the use of such buildings, structures or land first became non-conformities*.  The applicant shall furnish conclusive evidence as to the extent of the non-conformity when it was created.  The alteration of a permitted structure having some dimensional non-conformity is exempt from the requirement of a special exception provided no new dimensional non-conformity is created by the alteration.

ORDINANCE, § 603A(1), (2) (emphasis added).

---

[3] The Board neither considered nor was it asked to consider the administration building's square footage when approving the warehouse expansion.

[4] Nonconforming use is defined as "[a] use, *whether of land or of structure*, which does not comply with the applicable use provisions in the Zoning Ordinance or amendment heretofore or hereafter enacted where such use was lawfully in existence prior to the enactment of such ordinance, or amendment[.]" ORDINANCE, § 111C (emphasis added).

3

Applicant sought "to demolish the administration building" on Lot A "and expand the 478,080 square-foot [warehouse] with a 210,000 square-foot addition." R.R. at 31a. The resulting 697,080-square-foot warehouse would extend the existing 478,080-square-foot warehouse onto Lot A. In other words, Applicant sought to convert the area partially occupied by the administration building with a 210,000-square-foot addition to the existing warehouse building.

The Board conducted a public hearing, at which Applicant presented testimony. At the start of the hearing, counsel for Applicant stated Applicant seeks "to expand the existing warehouse building approximately 211,000 square feet. That would be the expansion of what's currently there, which would result in one warehouse building of approximately 697,000 square feet." R.R. at 38a-39a; N.T. at 23-24. Counsel, however, emphasized Applicant is "not asking for an expansion of nonconforming use but rather the alteration." R.R. at 39a; N.T. at 24. Distinguishing the present special exception request from the one approved in 2018, counsel stated that, unlike the previous request, which "focused entirely on the building containing the nonconformity," the present request focuses "on the *entire* property," including the "parking areas, recreational areas, access drives, and . . . the administration building." R.R. at 39a; N.T. at 24-25.

Applicant claimed the Property is composed of the three lots – Lots A, B, and C – each of which is dedicated to the warehousing and distribution use. Differently put, the lots constitute a single lot. R.R. at 61a; N.T. at 112. According to Applicant, IBM devoted 1,971,677 square feet of the Property to warehousing and distribution use. R.R. at 45a; N.T. at 51. The square footage increased to 1,993,683 following the 2018 approval of Applicant's special exception request. R.R. at 47a; N.T. at 58.

The Township objected to the special exception request on two grounds. First, it argued IBM created and treated Lot A as a separate tract, and therefore, the proposed alteration of the warehouse would fail under Section 603A(1), which requires the nonconformity to be confined to the lot on which it was located on the effective date of the Ordinance. R.R. 70a; N.T. 150-51. Second, the Township argued the proposed alteration would expand the warehouse beyond the 50 percent cap outlined in Section 603A(2), which applies to the area of the buildings, structures, or land devoted to the nonconforming use. R.R. at 71a; N.T. at 151-52. The Township noted that, despite its use of the term alteration, Applicant intends to expand the existing warehouse. *Id.*

Following the hearing, the Board unanimously denied relief. Although the Board determined the warehousing and distribution use on the Property was nonconforming, it concluded, among other things, that Applicant failed to "meet the criteria of Section 603(A)." R.R. at 11a. In particular, it concluded Applicant did not establish "the proposed nonconforming use is limited to 50 percent of the area of those buildings devoted to the nonconforming use as they existed on the date in which the buildings first became non-conformities." *Id.*

Applicant filed a timely land use appeal with Common Pleas and the Township intervened. Through its appeal, Applicant asserted the Board's decision to deny its request for special exception was an error of law and an abuse of discretion. Applicant asserted that, rather than focusing on the "area of those buildings" language of Section 603A(2), the Board should have focused on the area of the "*land* devoted to the nonconforming use." Notice of Appeal, 3/19/24, at ¶ 7(f) (emphasis added). In support, Applicant pointed out "the total area of land delegated to the nonconforming use prior to 2015 was [1,971,677 square feet] of the Property,

and the [proposed] alteration . . . is 210,000 [square feet], which is less than a 50 percent alteration." *Id.*

Without taking additional evidence, Common Pleas affirmed the Board's decision. Recognizing the Board's interpretation of the Ordinance was entitled to deference, and acknowledging the Board's previous disposition of Applicant's request for a special exception to expand the warehouse, Common Pleas concluded Section 603A(2) restricts expansion, in the aggregate, to 50 percent of the area of the buildings or land devoted to the nonconforming use, and that the Board's prior approval of a special exception limits Applicant from further expanding the warehouse. Common Pleas further concluded nonconformities "are not favored in the law." Common Pleas Op., 11/14/24, at 13. Applicant appealed to this Court.

## DISCUSSION

On appeal, Applicant presents the following issues for our review:

[I.] Whether [Common Pleas] erred in affirming the . . . [B]oard's conclusion that the proposed expansion of the building on the Property constituted an expansion of the nonconforming use where the building is not nonconforming, and the area devoted to the nonconforming use is not being expanded.

[II.] Whether [Common Pleas] erred in applying a so-called "common rule of grammar" to the language of Ordinance Section 603.A.2 that is not based on Pennsylvania law to limit expansion and alteration rights of a nonconforming use to a one-time 50 percent increase in building size, structure size, or area of land, when the area of the nonconforming use was not limited to the area of the building or structure on the Property[.]

[III.] Whether [Common Pleas] erred when it limited an alteration of the nonconforming use to changes in physical structures, i.e., buildings, where the express language of Ordinance §603.A.2 refers to "expansions or alterations of use" and such limitation would prohibit any changes to the nonconforming use outside the building, such as

6

modifications to parking areas devoted to the nonconforming use, in violation of a landowner's constitutional right to continue a nonconforming use under Pennsylvania law[.]

[IV.] Whether [Common Pleas] erred in applying the prohibition of Ordinance Section 606, which prohibits further expansion of a nonconforming building, structure, sign or use of land that has been previously expanded, to prohibit the future expansion of a conforming building where no physical expansion of the nonconforming use is proposed[.]

Applicant's Br. at 3. At the core, Applicant argues the Board erred in treating its request for special exception as an expansion of a nonconforming building, rather than an alteration of a nonconforming use of land. Applicant claims that, although the warehousing use on the Property is nonconforming, the warehouse itself conforms to the Ordinance.

Because Common Pleas took no additional evidence, our review is limited to determining whether the Board manifestly abused its discretion or committed an error of law. *In re Moyer*, 978 A.2d 405, 408 n.4 (Pa. Cmwlth. 2009) (citation omitted). As the finder of fact, the Board is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). This Court may not substitute its interpretation of the evidence for that of the Board. *Id.* Thus, the Board is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness. *Id.* Further, this Court must view the evidence presented in the light most favorable to the party that prevailed, including by giving that party the benefit of all reasonable inferences arising therefrom. *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015).

"A special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in

the ordinance . . . are met[.]" *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). Generally, "an applicant for a special exception has both the duty of presenting evidence and the burden of persuading the board that his proposed use satisfies the objective [or specific] requirements of the zoning ordinance for the grant of a special exception." *Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019) (quotation omitted). Once an applicant meets its burden of proof and persuasion regarding the objective requirements, "a presumption arises that . . . the proposed use . . . is consistent with the health, safety[,] and general welfare of the community." *Id.* (quotation omitted). "The burden then normally shifts to the objectors to the application to present evidence and persuade the [board] that the proposed use will have a generally detrimental effect on health, safety, and welfare." *Id.* (quotation omitted); *see also Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017) (*en banc*).

### 1. Ordinance interpretation

With this in mind, we address the merits of this appeal. Applicant first argues the Board erred in its interpretation of Section 603A(2) of the Ordinance. Applicant's Br. at 18. Applicant argues Section 603A(2) does not impose a 50 percent limitation solely on buildings, but rather applies it to buildings, structures and land devoted to the nonconforming use. Thus, Applicant contends "the appropriate denominator to be utilized in calculating the allowable [50 percent] of the area must include *all of the area* previously devoted to the use, not just the buildings." *Id.* (emphasis added).

The Board counters Applicant's interpretation of Section 603A(2) is inconsistent with its plain language. Bd.'s Br. at 13. The Board notes Section

603A(2) does not require the calculation of the area of the buildings, structures, *and* land devoted to a nonconforming use. *Id.* Rather, the plain language of Section 603A(2), referring to "the area of those buildings *or* structures *or* land devoted to the nonconforming use," contains a disjunctive. ORDINANCE, § 603A(2) (emphasis added).

"Although the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991, is not expressly applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike." *Geerling Florist, Inc. v. Bd. of Supervisors of Warrington Twp.*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020) (citations omitted). The Pennsylvania Supreme Court has explained: "[Z]oning ordinances should receive a reasonable and fair construction in light of the subject matter dealt with and the manifest intention of the local legislative body." *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 500 (Pa. 2006) (citation omitted). Generally, the plain language of the ordinance "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017) (citation omitted). If the language of the ordinance is clear and unambiguous in setting forth the intent of the governmental body, then we cannot disregard "the letter of the [ordinance] under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citation omitted). Moreover, "[i]t is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015).

Here, we disagree with Applicant's interpretation of Section 603A(2) because by its clear and unambiguous language, it mandates the total of all expansions or alterations of use must not go beyond an additional 50 percent of the area of the (a) buildings, (b) structures, _or_ (c) land devoted to the nonconforming use.

To bolster its position and to persuade us otherwise, Applicant principally relies on *Finegan v. Board of Supervisors of Earl Township*, 826 A.2d 76 (Pa. Cmwlth. 2003). There, the appellants owned a property located in a Woodland-Agricultural Conservation Zoning District, on which they operated a restaurant and bar. The business, however, was a valid nonconforming use. Without obtaining a permit from the township, the appellants later constructed an outdoor dining area. As a result, the township issued a violation notice.

The appellants filed an application with the zoning hearing board, seeking a determination whether the outdoor area itself was a pre-existing nonconforming use under the ordinance. Though the zoning board declined to find "any such use predating the [o]rdinance's adoption," it nevertheless granted the appellants' request for a special exception to permit them to continue using the outdoor area using 14 tables and supporting features. The appellants did not appeal the decision.

Years later, once again without obtaining a permit, the appellants expanded the outdoor dining area by adding 30 more tables with chairs. Consequently, the township issued another notice, informing the appellants that they were in violation of the zoning board decision. In response, the appellants, among other things, applied for conditional use approval under Section 1406(A) of the ordinance, which provided:

> A nonconforming use *consisting of land and structures in combination* shall be permitted to expand, by conditional use application, to an area *not to exceed 25 percent of the land* area occupied by the use *and 25*

*percent of the floor area* footprint of the structure containing the use at the time it became nonconforming. Such expansion *shall be calculated for land utilized by the use, such as parking areas, and floor area footprints of structures clearly accessory to the use*.

*Id.* (internal citations omitted) (emphasis added). The zoning board denied relief. The common pleas court affirmed the denial, and the appellants appealed.

This Court held the existing outdoor dining area was not a valid nonconforming use entitled to natural expansion, because it was specifically allowed under a special exception. *Id.* at 80 ("There exists no precedent in our caselaw for the proposition that an expansion of a nonconforming use converts the expansion itself into a nonconforming use."). However, relying on Section 1406(A), this Court determined the restaurant and bar use qualified as a combined nonconforming use of land and structures. As such, this Court reversed the common pleas court's decision and remanded the matter for further proceedings to determine the calculation of the land, including parking areas, used by the appellants' nonconforming use, with previously approved expansions credited against the 25 percent expansion limit.

The present case, however, is distinguishable because Section 1406(A) of the ordinance involved in *Finegan* expressly applied to nonconforming uses "consisting of land and structures in combination" and separately authorized expansion of both the land area occupied by the use and the structure. Section 603A(2) of the Ordinance, on the other hand, does not require cumulative expansion allowances for each category. Rather, as stated, it contains a disjunctive "or," applying the 50

percent limitation to buildings, structures or land.[5]  Accordingly, Common Pleas did not err in its interpretation of Section 603A(2) of the Ordinance.

## 2. *Building Expansion*

Next, we address Applicant's third issue that Common Pleas erred in limiting "an alteration of a nonconforming use to that of a structure, due to the ordinance's concept of 'alterations' as pertaining to changes in physical structures." Applicant's Br. at 30.  In support, Applicant baldly, and without citing any legal authority, claims Common Pleas' "interpretation is directly in conflict with the clear language of Ordinance § 603A(2) which allows alteration to a nonconforming use of land, as well as a structure and building." *Id.*  In this regard, Applicant claims it is merely altering, not expanding, the existing nonconforming use of the Property.  We disagree.

Upon review of the record, and as acknowledged by Applicant's counsel during the public hearing, Applicant principally seeks to expand the warehouse.  As the Board indicated in its decision, and the Township points out, Applicant's present request for a special exception, like the request previously approved by the Board in 2018, would increase the area of the warehouse.  Twp. Br. at 11-12.

To determine whether Applicant seeks to alter or expand the warehouse, we first must look to the Ordinance.  It defines alteration as "[a]ny change in the supporting members of a building or structure such as bearing walls, columns, beams or girders, joists or rafters, or *enclosing walls*. *Any renovation to a building, which would change its use, location, and/or size*." ORDINANCE, § 111C (emphasis added).

---

[5] Although a nonconforming use may be expanded, a municipality has the right to impose reasonable restrictions on such expansion. *Silver v. Zoning Bd. of Adjustment*, 255 A.2d 506, 507 (Pa.1969); *see also W. Cent. Germantown Neighbors v. Zoning Bd. of Adjustment of City of Philadelphia*, 827 A.2d 1283, 1287 (Pa. Cmwlth. 2003).  The Township has done so here, and the parties do not challenge the reasonableness of the restrictions.

Additionally, although not defined in the Ordinance, Merriam-Webster Online Dictionary treats expansion as "the act or process of expanding." *Expansion*, Merriam Webster, https://www.merriam-webster.com/dictionary/expansion (last visited June 26, 2026). Given the broad definition of the term alteration, and in light of its plain meaning, it necessarily includes expansion.

Based on our review of the evidence, viewed in a light most favorable to the Township, Applicant via the proposed alteration sought to expand the warehouse. Tellingly, Applicant specifically expressed an intention to demolish the administration building on Lot A and expand the existing warehouse. The resulting 697,080-square-foot warehouse would extend the warehouse onto Lot A. Any other conclusion would be disingenuous. Even accepting Applicant's claim that it sought to alter only the nonconforming use of the land, the practical and apparent effect of the proposed alteration is to increase the size of the warehouse beyond the restrictions set forth in Section 603A(2).[6] Accordingly, we cannot conclude the Board and Common Pleas erred in limiting Applicant's special exception request to the area of the building, i.e. the warehouse.[7]

---

[6] The record indicates that, to the extent Applicant made any changes to the parking areas, they were incidental to the warehouse expansion.

[7] We need not address Applicant's second issue that the Board erred in concluding that when one of three limitations of Section 603A(2) is met, i.e., 50 percent of the area of the (a) buildings, (b) structures, or (c) land devoted to the nonconforming use, an applicant cannot seek additional alterations or expansions. Applicant's Br. at 28-29. As stated, Applicant sought to expand only the area of the building, that is, the existing warehouse. Even if we did address this issue, Applicant still would not obtain relief. Contrary to its position, Section 603A(2) plainly and unambiguously limits all expansions or alterations of a nonconforming use to an additional 50 percent of the area of the buildings, structures, or land devoted to that use, as they existed when the use first became nonconforming. Any other interpretation of Section 603A(2) would produce an absurd outcome by permitting an applicant to expand the area of each building, structure and land by an additional 50 percent.

### 3. Prohibition on future expansion

We now turn to Applicant's last issue that Common Pleas erred in its reliance on Section 606 of the Ordinance, which provides:

> It is the express intent and purpose of this chapter that if a building, structure, sign or land was *expanded or extended to the limits of expansion for a non-conforming building*, structure, sign, or use of land as authorized by a prior zoning regulation or ordinance, *no further expansion of said building, structure, sign, or land shall be authorized*. In the event a non-conforming building, structure, sign, or use of land was expanded to a portion of the limits of expansion authorized by a prior zoning regulation or ordinance, additional expansion if permitted by this chapter, shall only be authorized to the amount of expansion not previously utilized pursuant to said prior zoning regulation or ordinance.

ORDINANCE, § 606 (emphasis added). According to Applicant, the Board's 2018 approval of its previous request for a special exception "did not involve a nonconforming building, but rather a nonconforming use within a dimensionally conforming building which was becoming larger." Applicant's Br. at 31-32.

Applicant is not entitled to relief. As previously stated, both the present as well as the past request for special exception involve the nonconforming use of warehousing and distribution on the Property. As with its prior request, Applicant's current request for special exception also seeks to expand the warehouse. Because Applicant previously sought and obtained a 49.7 percent increase of the warehouse, it is prohibited from seeking an additional expansion that would go beyond the 50 percent limit established in Section 603A(2). The Board found the present request for a 210,000-square-foot expansion exceeds the 50 percent limit. Moreover, as the Township observes, the proposed warehouse expansion would constitute a 114.19 percent increase in the area of the warehouse, expanding it from 325,450 square feet

in 2015, when the Property became nonconforming, to 697,080 square feet. Twp. Br. at 23. Accordingly, Common Pleas did not err in relying on Section 606, because it plainly prohibits further expansion of a nonconforming use once the use has reached the 50 percent expansion limit set forth in Section 603A(2).[8]

## CONCLUSION

Based on the foregoing, the Board did not err or abuse its discretion in denying Applicant's request for special exception. Accordingly, we affirm the order of Common Pleas.

_____
STACY WALLACE, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[8] Because Applicant failed to satisfy Section 603A(2), we need not discuss and analyze the remaining subsections of 603A.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PA 180 Kost Road LLC,       :
           Appellant   :
                      :
      v.              : No. 1705 C.D. 2024
                      :
Silver Spring Township Zoning  :
Hearing Board and Silver Spring  :
Township                 :

## **O R D E R**

    **AND NOW**, this 29th day of June 2026, the November 14, 2024 order of the Court of Common Pleas of Cumberland County is hereby **AFFIRMED**.

_____
STACY WALLACE, Judge